GREENE WELDING AND HARDWARE, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Bobby D. Kinnaird, Jr., Appellee).

Fourth District (Illinois Workers' Compensation Commission Division)
No. 4—09—0144WC

Argued November 4, 2009.—Opinion filed December 23, 2009.

Robert J. Doherty, Jr. (argued), of Roddy, Leahy, Guill & Zima, Ltd., of Chicago, for appellant.

Thomas R. Lichten (argued), of Thomas R. Lichten, Ltd., of Chicago, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Bobby D. Kinnaird, Jr., filed an application for adjustment of claim against his employer, Greene Welding & Hardware, seeking workers' compensation benefits for injuries due to the total amputation of his right ring finger and the partial amputation of his right middle finger due to an industrial accident on December 9, 2005. The matter proceeded to an arbitration hearing under section 19(b) of the Workers' Compensation Act (the Act) (820 ILCS 305/19(b) (West 2002)). The arbitrator found that claimant's injuries arose out of and in the course of his employment and awarded claimant permanent partial disability (PPD) benefits reflecting 100% loss of the use of the right ring finger and 50% loss of use of the right middle finger. The arbitrator also awarded $381.91 in medical expenses. The arbitrator denied claimant's request for penalties and attorney fees.

The claimant sought review of the arbitrator's decision before the Illinois Workers' Compensation Commission (Commission). The Commission affirmed and adopted the decision of the arbitrator with regard to PPD but reversed the arbitrator on the issue of penalties and attorney fees and awarded penalties pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2002)) in the amount of $1,552.14 and attorney fees in the amount of $620.85 pursuant to section 16 of the Act (820 ILCS 305/16 (West 2002)).

The employer then sought review of the Commission's decision in the circuit court of Vermillion County, which confirmed the Commission's decision. Claimant sought additional attorney fees against employer as a sanction for its challenge in the circuit court. The court denied claimant's request for fees. The employer then appealed to this court.

BACKGROUND

On December 9, 2005, claimant was running parts through a machine when the glove on his right hand was caught in the machine. Before he could pull his hand out of the glove, the machine started and claimant's right ring and middle fingers were amputated by the machine. Claimant was taken to Hoopeston Hospital by ambulance. He was later transferred to Indiana Hand Center, where he underwent surgery to repair some of the lingering damage from the amputation of his fingers.

Claimant was told that he could return to work immediately as long as he did not use his right hand. Claimant was also instructed not to drive while taking prescribed pain medication. Claimant's supervisors, Rex and Rhonda Greene, agreed to furnish claimant a ride to work whenever he was in need. Claimant worked as much as he could over the next month. He worked light duty most days and was paid temporary total disability (TTD) benefits on those days when he could not work due to the pain. Claimant was taken completely off duty by his physician for the week of January 9, 2006, through January 15, 2006. He received a check for TTD benefits for that week. Claimant was released by his physician to return to light duty on January 16, 2006. He worked light duty until he quit working at Greene on February 2, 2006. Claimant testified that he quit due to his problems with the work, an inability to tolerate the pain medication and an allergic reaction to a rubber bandage that was being used to reduce scarring.

Claimant testified that he did not receive any payment for permanent partial disability until after he hired an attorney and the attorney contacted the employer. On March 4, 2006, claimant received a check dated February 28, 2006, for $2,309.16 which indicated it was for 12 weeks PPD. Thereafter, claimant began receiving weekly checks until early November 2006.

With regard to medical expenses, admitted into evidence was a bill dated February 16, 2006, for $735 from Hoopeston Emergency Medical Specialists for emergency room care on December 9, 2005. Also admitted into evidence were notices from Creditors Collection Bureau dated April 6, 2006, for $735 and October 12, 2006, for an unpaid balance of $334.91. Included in the record was a letter from claimant's attorney to employer's claims adjuster dated March 13, 2006, requesting payment of the $735 bill from Hoopeston Emergency Medical Specialists. Finally, the record contained a bill from Danville Polyclinic for $47 for an office visit on June 30, 2006.

The Commission found that employer's failure to pay $735 to Hoopeston Emergency Specialists and $47 to Danville Polyclinic was unreasonable and vexatious. It assessed penalties and attorney fees.

The employer then sought review in the circuit court of Vermillion County, which confirmed the decision of the Commission. The employer now appeals to this court. Claimant seeks additional attorney fees and costs under Illinois Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)), alleging that employer's appeals to the circuit and appellate courts were made in bad faith.

## DISCUSSION

### 1. Penalties and Fees

If an employer delays paying compensation, the employer has the burden of showing that it had a reasonable belief that the delay was justified, and the Commission's determination on that issue will not be disturbed on review unless it is against the manifest weight of the evidence. *Howlett's Tree Service v. Industrial Comm'n*, 160 Ill. App. 3d 190 (1987). At issue in the instant matter are two allegedly unreasonable delays in paying compensation: (1) statutory amputation benefits; and (2) medical expenses for two providers totaling $782.

With regard to the statutory amputation benefits, the record is clear that claimant suffered amputations of his right middle finger and right ring finger on December 9, 2005. There was no dispute that the amputations arose out of and in the course of claimant's employment, and there was no dispute that claimant was entitled to statutory losses of 50% of the right middle finger and 100% of the right ring finger. There also was no dispute as to the corresponding dollar amount to which claimant was entitled under the Act. Claimant returned to light duty within days of the accident and, with the exception of the week of January 9, 2006, through January 15, 2006, was cleared for light duty work.

The Commission, relying upon *Lester v. Industrial Comm'n*, 256 Ill. App. 3d 520 (1993), determined that employer's delay in paying statutory amputation benefits until after claimant had hired an attorney was unreasonable and vexatious. In *Lester*, the court noted that section 8(e) of the Act (820 ILCS 305/8(e) (West 2002)) provides for "immediate" payment of statutory amputation benefits. The court noted:

> "[W]e find that the legislature intended that individuals who receive amputations should be *immediately* compensated when no dispute exists as to whether the injury arose out of and in the course of employment. Such result is consistent with the legislature's intent because *prompt* payment alleviates the possibility that an employee will be faced with unnecessary financial burdens. Requiring *immediate* payment is not unfair to the employer because statutorily it would have to pay the amount owed at some point in time. It is consistent with the purpose of the Act to require the amount owed to be paid *promptly*. The employer can pay the amount owed immediately since section 8(e) clearly sets forth the compensation an employer is obligated to pay." (Emphases added.) *Lester*, 256 Ill. App. 3d at 523.

Employer maintains that the court in *Lester* was unclear as to when payment of statutory amputation benefits were to be paid. We

find the *Lester* court's holding to be clear. Statutory amputation benefits are to be paid "immediately" and "promptly." The *Lester* court observed that once there is no dispute that the amputation arose out of and in the course of employment, payment should be immediately and promptly forthcoming. *Lester*, 256 Ill. App. 3d at 523.

In *Modern Drop Forge Corp. v. Industrial Comm'n*, 284 Ill. App. 3d 259, 265-66 (1996), the court cited the same passage from *Lester* cited above in affirming the Commission's finding of unreasonable and vexatious delay even where the employer's rationale for delaying payment was to see if the claimant would elect a wage-differential remedy under section 8(d)(1) of the Act instead of the section 8(e) amputation benefit. The court in *Modern Drop Forge* noted that even if the claimant later elected a wage-differential remedy, any amount he previously received under section 8(a) would be offset against the future award. *Modern Drop Forge*, 284 Ill. App. 3d at 266.

Here, the employer maintained before the Commission that it delayed payment of section 8(e) benefits until claimant achieved maximum medical improvement (MMI). The Commission rejected that as a justification, noting that there was no logical reason to withhold the statutory amputation benefit until claimant reached MMI. Before this court, employer abandons the MMI argument and argues that it did not have sufficient guidance from the court or the Commission to know when it should pay the statutory amputation benefit.

■ The employer also maintained that the Commission had previously provided a "grace period" of 60 days in which an employer could delay payment of statutory amputation benefits. See *Lierly v. Methode Electronics*, Ill. Workers' Comp. Comm'n No. 01—49292 (October 23, 2006). We reject any implication that a grace period exists in paying statutory benefits under section 8(e) of the Act. Rather, we hold that the Act established a bright-line test for payment of such benefits. Where there is no dispute regarding whether a claimant's amputation injuries arose out of and in the course of his or her employment, statutory benefits for amputation are to be paid no later than the time at which the employer reasonably knows the extent of the amputation and is capable of calculating the appropriate average weekly wage.

The Commission held that benefits were unreasonably and vexatiously delayed when they were not paid until after claimant sought assistance of legal counsel to secure the payment of those benefits. It also noted that at least 80 days had passed since the accident, and there was no dispute that claimant's injuries arose out of and in the course of his employment. Further, employer had made no showing that the delay was justified. We cannot say that the Commission's finding that claimant was entitled to penalties and attorney fees was against the manifest weight of the evidence.

■ As to the unpaid medical bills, the Commission held that the employer was obligated to pay the bills and that the bills were presented for payment but were not paid in a timely manner. The record contains sufficient evidence to indicate that the bills were presented to the employer but were not paid. The bill for $735 for emergency room service on December 9, 2005, the date of the accident, appears to have been presented to the employer both before and after it was placed with a collection agency. Likewise, the bill for $47 from Danville Polyclinic for postoperative treatment to claimant's right hand on or about June 30, 2006, was in evidence. Based upon the record, it cannot be said that the Commission's findings that the employer failed to pay these bills in a timely manner was against the manifest weight of the evidence.

## 2. Sanctions

■ Claimant maintains that employer's appeal to both the circuit court and to this court was taken in bad faith in contravention of Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)). Rule 375(b) calls for sanctions where an appeal is not reasonably well grounded in law or fact and is made in bad faith or to avoid paying an award. Claimant's argument is that the employer's position that the holding in *Lester* was confusing as to when it should pay section 8(a) benefits amounts to a frivolous appeal made in bad faith. The employer maintains simply that its appeals were appropriate. We find that although the employer's argument is unpersuasive, it is not so lacking in foundation in law and evidence as to merit sanctions. See *Edward Gray Corp. v. Industrial Comm'n*, 316 Ill. App. 3d 1217, 1223 (2000).

## CONCLUSION

For the foregoing reasons, the decision of the Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, HUDSON, and DONOVAN, JJ., concur.