FOURTH DIVISION
DATE 2-3-11

No. 1-10-1729

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| RBS CITIZENS, NATIONAL ASSOCIATION, | ) | Appeal from the |
| as Successor by Merger to Charter One Bank, | ) | Circuit Court of |
| N.A., | ) | Cook County |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 09 CH 8149 |
| | ) | |
| RTG-OAK LAWN, LLC, an Illinois Limited | ) | |
| Liability Company, RTG-BLOOMINGDALE, | ) | |
| LLC, an Illinois Limited Liability Company, | ) | |
| RICHARD S. GAMMONLEY, RICHARD T. | ) | |
| GAMMONLEY, 51st AVENUE STATION | ) | |
| CONDOMINIUM ASSOCIATION, UNKNOWN | ) | |
| OWNERS and NONRECORD CLAIMANTS, | ) | Honorable |
| | ) | Mathias W. Delort, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

I.  BACKGROUND

Before us is an interlocutory appeal challenging the circuit court's orders striking and

dismissing with prejudice certain affirmative defenses and counterclaims raised by defendants in

response to an action to foreclose on a junior mortgage by plaintiff.  For the reasons elucidated

below, we affirm the judgment of the circuit court.

RTG-Bloomingdale, LLC, is a limited liability company controlled by the Gammonley

Group, of which Richard T. Gammonley and Richard S. Gammonley are the principals. RTG-Bloomingdale and RBS Citizens (RBS) executed an "Open-End Construction Mortgage and Security Agreement" (Bloomingdale Loan) on December 16, 2005, for $27 million to finance the development of a residential condominium project located at 105-135 North Lakeview Drive in Bloomingdale, Illinois. A "Revolving Credit Promissory Note" (Note), the financial instrument primarily at issue here, was signed by RTG-Bloomingdale to evidence the loan, which the Gammonleys guaranteed by individually executing "Guaranty Agreements."

RTG-Bloomingdale defaulted on the Bloomingdale Loan in 2007, and subsequently RBS, the Gammonleys, and RTG-Bloomingdale executed a series of forbearance agreements between January and June 2008. In a January 15, 2008, forbearance agreement, RTG-Bloomingdale, through the Gammonleys, granted RBS additional security for the Bloomingdale Loan in the form of a junior mortgage on property located at 5114-5130 West 95th Street in Oak Lawn, Illinois (Oak Lawn Mortgage), which is owned by RTG-Oak Lawn, LLC, a related entity to RTG-Bloomingdale. The forbearance agreement required a certain number of condominium units at the Bloomingdale project to be sold by March 2008; however, the requirement was not met. The parties amended the forbearance agreement to reduce the number of condominium units required to be sold and extended the deadline to May 15, 2008, but this reduced requirement was not met either. The second, and final, forbearance agreement was entered into providing that the Gammonleys would pay RBS $200,000 for each unsold unit below the aforementioned sales requirement, labeled "Sale Deficiency Amounts."

The Gammonleys were unable to satisfy the sales requirements and also failed to make any

payments towards the Sale Deficiency Amounts. The controlling forbearance period expired on December 31, 2008, and the Note became due on January 1, 2009. The Note remained unpaid and RBS subsequently filed the underlying complaint for foreclosure on February 24, 2009. The complaint sought to foreclose on the Oak Lawn Mortgage and a related security interest, and stated causes of action against defendants seeking recovery of any unpaid amounts under the Bloomingdale Loan and Note. In response, defendants filed an answer, which also contained the affirmative defenses and counterclaims at issue here based on alleged violations of the Interest Act (815 ILCS 205/1 *et seq.* (West 2006)), the duty of good faith and fair dealing, the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)), and common law fraud. The allegations revolved around the general contention that RBS did not disclose its method of computing and charging interest, and unlawfully increased the amount of interest charged on the Bloomingdale Loan. On September 8, 2009, RBS moved to strike and dismiss all affirmative defenses and counterclaims pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2008)). In a written order entered on January 20, 2010, the circuit court granted the motion, dismissing the affirmative defenses and counterclaims with prejudice. Defendants moved for reconsideration which, after briefing and oral arguments, the circuit court denied in another written order. Defendants instant interlocutory appeal followed.

## II. ANALYSIS

Defendants first contend that the circuit court erred in dismissing their affirmative defenses and counterclaims. As stated, the circuit court dismissed defendant's affirmative defenses and

counterclaims pursuant to sections 2-615 and 2-619 of the Code. A motion to dismiss under section 2-615 admits all well-pleaded facts and attacks the legal sufficiency of the complaint. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790 (2001). A motion to dismiss under section 2-619, on the other hand, admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). We review an order granting a motion to dismiss pursuant to section 2-615 or section 2-619 *de novo*. *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 719 (2008).

Defendants first contend that they adequately pled: (1) their affirmative defense and counterclaim based upon the Interest Act; (2) their affirmative defense and counterclaim based upon a breach of the duty of good faith and fair dealing; and (3) their counterclaim based upon statutory and common law fraud. As noted above, the affirmative defenses and counterclaims revolve around a general assertion that the Note's interest terms were breached or, at the least, that they were ambiguous.

We first note that the forbearance agreements signed by the Gammonleys contain language providing that the Gammonleys have "no claims or defenses to the enforcement of the rights and remedies of Lender thereunder," and that the agreements and relevant loan documents "constitute the legal, valid and binding obligations of Borrower, enforceable against it in accordance with their respective terms, and Borrower has no valid defense to the enforcement of such obligations."

The forbearance agreements containing a waiver of defenses were executed in 2008 and the offenses, as alleged, occurred upon the execution of the Note in 2005. We have held that Illinois permits a party to contractually waive all defenses, and this court is not precluded from upholding it. *Bank of America, N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 172 (2010). This court, however, has stated that the duty of good faith and fair dealing is not waived absent an "express disavowal." *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 504 (2002). The waiver of defenses here did not specifically address the duty of good faith and fair dealing, and therefore we cannot find there was an express disavowal of the duty. Furthermore, waiver of defenses are inapplicable to claims originating under the Consumer Fraud Act. 815 ILCS 505/10c (West 2006). Accordingly, we will not consider those claims to be waived.

As to the remaining claims of common law fraud and violation of the Interest Act, it is less explicit how they are affected by the waiver of defenses. In *Bank of America, N.A.*, however, this court found that a waiver of defenses was applicable to various affirmative defenses and counterclaims, including breach of contract, unclean hands, fraud, and estoppel, which suggests to us that claims of common law fraud can be waived. *Bank of America, N.A.*, 401 Ill. App. 3d at 172. As for the Interest Act claims, as an initial matter, we agree with defendants' observation that the Interest Act is penal in nature. See *Saskill v. 4-B Acceptance*, 139 Ill. App. 3d 143, 145 (1985). We fail to see, however, how this translates into a conclusion that affirmative defenses based on the Interest Act are not subject to a waiver of defenses and defendants notably fail to cite to any authority indicating as such. Unlike the Consumer Fraud Act, the Interest Act is silent on whether a waiver of defenses is prohibited for claims under the Interest Act. Furthermore, the

waiver of defenses in this case was essentially part of the consideration that RBS received in exchange for a forbearance agreement. To allow defendants to be the sole party to enjoy the benefit of the forbearance agreement would be contrary to Illinois' public policy favoring the enforcement of contracts. See *Royal Extrusions Ltd. v. Continental Window & Glass Corp.*, 349 Ill. App. 3d 642, 651 (2004). With these principles in mind, we would be inclined to find that defendants also waived any affirmative defense or counterclaim based upon the Interest Act and common law fraud. However, despite this potential contractual waiver, and because we are bound to analyze the terms of the Note in the context of defendants' remaining arguments, we will nevertheless address defendants' contentions for the sake of completeness.

## A. Interest Act

Defendants first argue that their affirmative defense and counterclaim based on the Interest Act were adequately pled. In order to understand this argument and the remaining arguments, we must briefly discuss the various interest computation methods used in commercial lending. As the parties and the circuit court correctly recognized, there are generally three different methods lenders use to compute interest: the 365/365 method, 360/360 method, and 365/360 method. See *American Timber & Trading Co. v. First National Bank of Oregon*, 511 F.2d 980, 982 (9th Cir. 1973). Under the 365/365 method, an interest rate is divided by 365 to determine a daily interest factor, which is applied to the number of days in which a loan is outstanding. The 360/360 method assumes that each month consists of 30 days, with each month therefore carrying an identical interest rate and charge (incomplete months divide the number of days by 360). The 365/360 method assumes that each month consists of 30 days and determines a daily interest

6

factor by dividing the interest rate by 360. It then multiplies this computed rate by the number of days a loan is outstanding. Therefore, given any particular base interest rate, the 365/365 method and 360/360 method would yield identical annual interest charges, whereas the 365/360 method would yield approximately 5 more days of annual interest. RBS utilized the 365/360 method when charging interest under the Note.

Here, defendants' argument is couched within the belief that the stated interest rate on the Note is identified as "*per annum*," which they explain, at length, is defined as "by the year." Defendants then point only to section 5 of the Interest Act in support, which provides:

> "No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State." 801 ILCS 205/5 (West 2008).

Defendants argue that Illinois thus "prohibits the receipt of interest on a *per annum* note in any amount greater than that expressly authorized under the statutory definitions of *per annum* and the obvious meaning of a 'year.' " Assuming that the stated interest rate is *per annum*, defendants conclude that RBS' utilization of the 365/360 method in computing interest was improper, the Note is "best" interpreted as requiring the use of the 360/360 method, and that at the least, the Note is ambiguous.

As a threshold matter, the record indicates that while litigating RBS' motion to dismiss on the alleged Interest Act violation, defendants did not argue that the Note's interest terms could be interpreted to require the application of the 360/360 method. Instead, defendants persistently

7

argued in their response to the motion to dismiss that a 365-day year should apply and, thus, that the 365/365 method was applicable. During the motion for reconsideration, and now on appeal, defendants have abandoned their original theory that the Note provides for the use of the 365/365 method and now claim the Note would be best interpreted as calling for the use of the 360/360 method. Like the circuit court opined in its written order denying defendants' motion for reconsideration, we find these positions to be inconsistent. We have held that arguments raised for the first time in a motion for reconsideration in the circuit court are waived on appeal. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 134 (2008). Given that defendants presented their current theory that the 360/360 method applies as it relates to the Interest Act allegation during their motion to reconsider, and not during the motion to dismiss, the argument is forfeited.

Defendants, however, briefly argued in the alternative during the motion to dismiss that the Note's terms were ambiguous or contradictory. Because of this, we are nevertheless bound to consider the language of the Note itself. A contract's meaning and whether it is ambiguous are questions of law, subject to *de novo* review. *Old Republic Insurance Co. v. Ace Property & Casualty Insurance Co.*, 389 Ill. App. 3d 356, 363 (2009). Paragraph one of the Note, titled "Interest," provides in pertinent part:

> "Interest on the outstanding principal amount of the Loan shall accrue during the Interest Period applicable thereto at a rate equal to the sum of the LIBOR Rate for such Interest Period plus the Applicable Margin thereto and be payable on each Interest Payment Date. Interest shall be computed on the principal balance outstanding from time to time, on the basis of a three hundred sixty (360) day year, but shall be charged for the actual number of

8

days within the period for which interest is being charged."

As discussed above, the 365/360 method employed by RBS calculates a daily interest rate based on a 360-day year, but charges interest based on a 365-day year. Here, the interest provision explicitly provides that interest will be "computed *** on the basis" of a 360-day year, but "shall be charged for the actual number of days" in the applicable period. This court finds that such language is clear in communicating that the interest rate would be "computed" on a 360-day year, while interest "charged" would be based on the number of actual days that occurred (*i.e.*, based on a 365-day year). Notably, the phrase *per annum* does not appear in the interest provision. As the circuit court found, we find no ambiguity in the language and it is clear to this court that the Note provides for the 365/360 method of interest calculation. We also note that a November 21, 2005, commitment letter provided for identical interest computation language.

Defendants' references to the interest rates given as *per annum* in the Note originate from paragraphs providing rates to be used during interest computations, and not from paragraph one of the Note, nor anywhere else purporting to provide the results of the interest computations explained in paragraph one. Paragraph seven provides for an increased interest rate upon default of 4% *per annum* and an appendix to the Note provides that "Applicable Margin" is defined as 2.25% *per annum*. Neither section discusses how the overall interest rate will be calculated or charged, which paragraph one explicitly addresses. Defendants' Interest Act argument is dependent upon a finding that they were deceived by the Note, or at least that the interest terms were ambiguous. However, the interest terms were unambiguous and were set out in the first paragraph of the Note. We can find nothing in the record which indicates that the terms were

9

concealed from defendants or that defendants were somehow improperly induced into signing the Note. Simply because the defendants claim they were unaware of how interest would be ultimately calculated and charged is not an appropriate factor to consider in determining the ambiguity, or lack thereof, in a contract. See *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App. 3d 810, 819 (1993) ("[a] party who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding"). Therefore, even if defendants' Interest Act arguments are not contractually or procedurally waived as discussed above, we find no ambiguity in the interest provision of the Note and we conclude that no Interest Act violation occurred here. Accordingly, the circuit court properly dismissed the associated affirmative defense and counterclaim. Although defendants also advance arguments which discuss, *inter alia*, whether the Interest Act protects RBS and the constitutionality of portions of the Interest Act favorable to RBS, we do not rely on any such theories to affirm the circuit court's order and we find it unnecessary to address those arguments.

B.  Duty of Good Faith and Fair Dealing

Defendants' next argument relates to their affirmative defense and counterclaim based upon a breach of the duty of good faith and fair dealing. Claims revolving around a duty of good faith and fair dealing occur "when one party is given broad discretion in performing its obligations under the contract." *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 286 (2007). The duty is implied in every contract and requires a party vested with contractual discretion to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of parties. *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 131 (2008). Its purpose

is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 523-24 (1996).

Defendants' affirmative defense and counterclaim regarding this implied duty allege that RBS: (1) "deliberately created ambiguity in the language of the loan documents" as to the calculation of interest; and (2) "exercised its discretion to calculate interest in a manner that charged *** more interest than Defendants reasonably expected." We first question the applicability of a claim regarding the duty of good faith and fair dealing as to defendants' first allegation. Defendants' allegation that RBS "deliberately created ambiguity" relates to an action and decision made prior to the offer and acceptance of the terms of the loan. The duty of good faith and fair dealing, however, does not arise out of precontractual actions and is only applicable to the conduct of parties to an existing contract. See *Gore*, 376 Ill. App. 3d at 288; see also *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1445 (7th Cir. 1992). Accordingly, we find that any allegations relating to the formation of the Note here do not implicate or violate the duty of good faith and fair dealing.

As to defendants' second allegation regarding their reasonable expectations and RBS' alleged exercise of discretion, we are required to consult the Note itself. We have, however, already discussed the lack of ambiguity in the interest terms of the Note in our Interest Act discussion. Because the Note's interest provision is unambiguous, we cannot logically find that defendants' reasonable expectations were violated given that the interest computations that

11

occurred could have been contemplated during the drafting of the contract.  Furthermore, we cannot find that RBS exercised any degree of broad discretion as required for a claim of a breach of the duty of good faith and fair dealing, given that the unambiguous interest language did not grant RBS any discretion as to how interest would be computed or charged.  Accordingly, defendants' affirmative defense and counterclaim based on such a breach were correctly dismissed.

### C.  Fraud

We now consider defendants' counterclaim relating to allegations of fraud.  Factors to consider in determining the viability of a claim under the Consumer Fraud Act are:  (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.  *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002).  Common law fraud requires: (1) a false statement of material fact; (2) knowledge that the statement was false; (3) intent that the statement induce another to act; (4) reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement.  *Linhart v. Bridgeview Creek Development, Inc.*, 391 Ill. App. 3d 630, 634 (2009).

Defendants' fraud claims are predicated upon an assertion that the interest calculation method employed here was deceptive and based upon misrepresentations and false statements made by RBS to defendants.  As discussed above, however, we have found the Note's interest provision to be unambiguous, and an examination of the interest charged by RBS indicates no deviation from terms of the Note.  Defendants point to nothing in the negotiations or numerous

agreements contained within the record which might indicate any impropriety or deception on the part of RBS. Therefore, we cannot find that RBS violated the Consumer Fraud Act by offending public policy, injuring defendants, or somehow acting in an immoral, unethical, oppressive or unscrupulous manner. Put simply, RBS did nothing but abide by the terms of the Note, which the record indicates was properly executed. For similar reasons, no common law fraud claim can stand either. This court has held that " '[a] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another.' " *D.S.A. Finance Corp. v. County of Cook*, 345 Ill. App. 3d 554, 561 (2003) (quoting *Chicago Export Packing Co. v. Teledyne Industries, Inc.*, 207 Ill. App. 3d 659, 663 (1990)). Furthermore, we have noted that such a rule is "particularly appropriate where the parties to the agreement are sophisticated business persons," as clearly was the case here. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 366 (1995). Because the interest terms of the Note were unambiguously provided for, defendants' allegations that such terms were fraudulently withheld from them are meritless and accordingly, defendants' counterclaim was properly dismissed.

### D. Dismissal with Prejudice

Defendants next contend that the circuit court erred in dismissed defendants' affirmative defenses and counterclaims with prejudice. Defendants argue that because their affirmative defenses and counterclaims were contained in their first responsive pleading, they should be afforded an opportunity to replead.

While it is true that Illinois has a liberal policy of allowing the amendment of pleadings,

this right is not unlimited. *1515 North Wells, L.P. v. 1513 North Wells, L.L.C.*, 392 Ill. App. 3d 863, 870 (2009). For example, a request to amend may be properly denied in instances where, even after amendment, no cause of action could be stated. See *Terry v. Metropolitan Pier & Exposition Authority*, 271 Ill. App. 3d 446, 456 (1995).

We find that the circuit court properly dismissed the affirmative defenses and counterclaims advanced by defendants with prejudice. At this point, it is clear that defendants' affirmative defenses and counterclaims share a common thread: that the interest provision in the Note is ambiguous. The allegations of an Interest Act violation, breach of the duty of good faith and fair dealing, and fraud all require that the interest provision in the Note was not adhered to or, at the least, was ambiguous. Even a cursory reading of the Note, however, indicates that it is not ambiguous. We agree with the circuit court's observation that no amendment to defendants' allegations could hope to cure this defect, and accordingly, we find that the circuit court did not err in dismissing with prejudice.

### E. Motion for Reconsideration

Defendants last contend that the circuit court erred in denying their motion for reconsideration of the January 20, 2010, order dismissing their affirmative defenses and counterclaims. Orders denying a motion for reconsideration are reviewed under the abuse of discretion standard. *Peregrine Financial Group, Inc. v. Futronix Trading, Ltd.*, 401 Ill. App. 3d 659, 660 (2010). Motions for reconsideration are meant to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009).

14

Defendants primarily point to their submission of two affidavits in support of this contention, one from a banker and another from a lawyer, each with experience in the area of commercial lending. The affidavits stand for essentially identical propositions, that the Note's interest provision could be read to provide for a 360/360 method of calculation. As a threshold matter, we question whether such opinion evidence constitutes newly discovered evidence. We find nothing in the record indicating why such evidence could not have been brought before the circuit court during hearings on the motion to dismiss. Although defendants assert that such evidence would not have been relevant, this belies the fact that the single common thread among defendants' affirmative defenses and counterclaims revolved around interpreting the Note's interest provision. In any event, even if the circuit court and this court could properly consider the affidavits, two individual's opinions as to the interpretation of the relevant interest provision can hardly be considered authoritative or even persuasive, when compared to the plain language of the Note itself. Defendants also claim the circuit court misapplied existed law, correctly stating that Illinois law provides that contract language that is susceptible to more than one meaning is ambiguous. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). However, despite the affidavits submitted and continued assertion that defendants misunderstood the Note's language, we cannot agree that the Note's interest provision language is susceptible to more than one meaning for the reasons discussed above. Accordingly, the circuit court did not err in denying defendants' motion for reconsideration.

## F. Sanctions

RBS argues, in a motion taken with this appeal, that defendants' appeal is frivolous under

Supreme Court Rule 375. Ill. S. Ct. R. 375 (eff. Feb. 1, 1994). Supreme Court Rule 375 provides that sanctions may be appropriate where it is determined that an appeal "is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." 375. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). We have held on numerous occasions, however, that an unsuccessful appeal does not necessarily indicate that the appeal was frivolous, was taken in bad faith, or otherwise requires the imposition of sanctions. See, *e.g.*, *Greene Welding & Hardware v. Illinois Workers' Compensation Comm'n*, 396 Ill. App. 3d 754, 759 (2009); *Trogub v. Robinson*, 366 Ill. App. 3d 838, 847-48 (2006).

Under the circumstances of this appeal, we do not find that sanctions would be appropriate here. While we are unpersuaded by defendants' arguments, it is not unreasonable that defendants would appeal the circuit court's decision given that the primary issues on appeal were subject to *de novo* review and largely dependent upon an interpretation of a single contract provision. We therefore deny RBS' request for sanctions under Supreme Court Rule 375.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

1-10-1729

(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | RBS CITIZENS, NATIONAL ASSOCIATION,<br>as Successor by Merger to Charter One Bank,<br>N.A.,           )<br>             )<br>     Plaintiff-Appellee,  )<br>             )<br>     v.        )<br>             )<br>RTG-OAK LAWN, LLC, an Illinois Limited )<br>Liability Company, RTG-BLOOMINGDALE, )<br>LLC, an Illinois Limited Liability Company, )<br>RICHARD S. GAMMONLEY, RICHARD T. )<br>GAMMONLEY, 51st AVENUE STATION )<br>CONDOMINIUM ASSOCIATION, UNKNOWN )<br>OWNERS and NONRECORD CLAIMANTS, )<br>             )<br>   Defendants-Appellants.  ) |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-10-1729<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>February 3, 2011<br>(Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Gallagher, P.J., and Pucinski, J., concurred. |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorables Mathias W. Delort, Judge Presiding. |

17

| | |
|---|---|
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for **Defendants/Appellants:**<br><br>Michael S. Pomerantz, Andrew A. Jacobson<br>Brown, Udell, Pomerantz & Delrahim, Ltd.<br>1332 N. Halsted St. Suite 100<br>Chicago, IL 60642<br>312.475.9900<br><br>Attorneys for **Plaintiff/Appellee**:<br><br>Michael Weininger, Lawrence M. Karlin<br>Lupel Weininger LLP<br>30 N. LaSalle St., Suite 3520<br>Chicago, IL 60602<br>312.260.7700 |