# Illinois Official Reports

## Appellate Court

---

### *ESP Global, LLC v. Northwest Community Hospital*, 2020 IL App (1st) 182023

---

| | |
|---|---|
| Appellate Court Caption | ESP GLOBAL, LLC, a North Carolina Limited Liability Company and Assignee of ECONOMICAL SERVICE PROGRAMS, LLC, a Delaware Limited Liability Company, Plaintiff-Appellee and Cross-Appellant, v. NORTHWEST COMMUNITY HOSPITAL, Defendant-Appellant and Cross-Appellee. |
| District & No. | First District, Second Division<br>No. 1-18-2023 |
| Filed<br>Rehearing denied | March 3, 2020<br>April 28, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-L-11012; the Hon. Diane M. Shelley, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded with directions. |
| Counsel on Appeal | Joseph P. Kincaid and Catherine Basque Weiler, of Swanson, Martin & Bell, LLP, of Chicago, for appellant.<br><br>Mitchell S. Chaban and Katherine A. Grosh, of Levin Ginsburg, of Chicago, for appellee. |

Panel                    JUSTICE LAVIN delivered the judgment of the court, with opinion.
                         Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in
                         the judgment and opinion.


**OPINION**

¶ 1    Plaintiff, ESP Global, LLC (ESP), provided equipment consultancy services to defendant, Northwest Community Hospital (Northwest), pursuant to a written contract between the parties. Northwest subsequently procured additional services from ESP that were not expressly included in their contract. After Northwest refused to pay for those additional services, ESP sued Northwest for breach of contract and, alternatively, unjust enrichment or *quantum meruit* relief. The case proceeded to a bench trial, where the trial court ultimately found that there was a contract implied in fact between the parties for the additional services and that Northwest had breached that contract. Consequently, the trial court entered judgment in favor of ESP for $194,159.43.

¶ 2    Northwest now appeals, contending that the trial court erroneously found that a contract implied in fact existed between the parties for the additional services because those services were included in their written contract and, furthermore, that any agreement as to those services had to be in writing. Northwest alternatively contends that the trial court's damages award was based on speculative evidence and, therefore, must be reduced.

¶ 3    On cross-appeal, ESP contends that the trial court improperly excluded evidence of ESP's damages, thus resulting in an insufficient amount of damages to ESP. For the reasons that follow, we affirm the judgment in Northwest's appeal. In ESP's cross-appeal, we remand for further proceedings.


¶ 4                                I. BACKGROUND

¶ 5    The following evidence was adduced at trial through testimony and exhibits. We note that 90 joint trial exhibits were received into evidence by stipulation.

¶ 6    In 2014, Northwest hired ESP, an equipment maintenance consultancy company, to assist Northwest in reducing its equipment expenses. Peter Vincer, the president and owner of ESP, testified that his company typically assists clients using a two-step approach. First, ESP conducts an initial assessment of the client's equipment service expenditures and then recommends cost-reduction strategies accordingly. This is known as "Phase I." During the second step, or "Phase II," ESP assists the client in implementing the prior recommendations. In general, ESP charges a flat fee for Phase I and a contingency fee for Phase II, which is based on a percentage of the client's actual savings.

¶ 7    On June 20, 2014, the parties entered into a "Letter of Agreement" (the contract). The contract called for ESP to conduct an initial assessment of Northwest's equipment service expenditures and recommend cost-reduction strategies, *i.e.*, complete Phase I. In exchange, Northwest would pay ESP a flat fee of $10,000. The scope of the work was set forth in the contract's "Services" clause. That clause stated: "ESP agrees to assist Client in the provision of those services identified in Exhibit A of this Agreement." Exhibit A identified 10 services

that would be conducted by ESP. Any services that were not included in Exhibit A were governed by the contract's "Additional Services" clause. That clause stated:

> "At the conclusion of this assessment the Client may choose to hire ESP to provide services outside the scope of this agreement. Compensation for these additional services is negotiable between the Parties. (Typically clients choose a method of payment such as a negotiated percentage of savings realized, or a fixed fee percentage, paid by the respective suppliers.) Examples of the additional services may include:
>
> A. Drafting a procurement document, such as [a request for proposal], to be used as a tool to identify service alternatives on specific equipment."

ESP completed the initial assessment in early July 2014.

¶ 8     Thereafter, Northwest expressed interest in obtaining additional services from ESP, namely, assistance with a request for proposal (RFP). An RFP is a document that is sent to equipment suppliers, asking them to submit a bid on a specific product or service. The interim executive director of Northwest's supply chain, Jac Higgins, testified that ESP agreed to assist Northwest with an RFP in exchange for 10% of Northwest's savings over a five-year period.

¶ 9     On July 15, 2014, Higgins received an e-mail from Michael Hartke, Northwest's chief operating officer, requesting "the use of a third party to assist [Northwest] in the RFP process *** for the NCH equipment maintenance." Higgins then forwarded that request to Vincer, stating, "Can you help me with this request from our COO? How long will it take to prepare something?" In response, Vincer agreed to prepare an RFP draft, as well as a "draft copy of a project management document," by the following day.

¶ 10    On July 26, 2014, Vincer sent Higgins a draft of the RFP, as well as a list of prospective vendors. After Northwest approved the RFP, ESP distributed it to the prospective vendors. Meanwhile, Higgins's employment with Northwest terminated.

¶ 11    Ultimately, Northwest selected Sodexo as the winning bidder because Sodexo included a $400,000 cash incentive, among other reasons. Vincer testified that ESP negotiated a contract with Sodexo on behalf of Northwest. The Sodexo contract was finalized on September 30, 2014. When ESP attempted to collect its fee for the RFP, however, Northwest refused to pay, claiming that it never agreed to any additional services or signed a "Letter of Agreement" for Phase II. Northwest further maintained that the additional services were within the scope of the parties' written contract.

¶ 12    The next year, ESP sued Northwest for the additional work it performed pursuant to an implied contract between the parties, claiming it was entitled to 10% of Northwest's actual savings resulting from the Sodexo contract for a five-year period. We note, however, that the trial in this case took place before the completion of that five-year period. Consequently, ESP sought only damages that had accrued prior to trial in the amount of $275,001.95, which represented 10% of Northwest's actual savings for a two-year, nine-month period.

¶ 13    At trial, Vincer testified that, to determine Northwest's actual savings, ESP calculated the difference between Northwest's equipment maintenance costs before and after the Sodexo contract. That amount was used as a baseline number to calculate the estimated savings over the life of the Sodexo contract. Notably, that baseline number was included in the parties' joint exhibit that was received into evidence by stipulation. Although Vincer's testimony was based exclusively on the baseline number, the trial court nevertheless struck portions of his testimony, finding that it constituted expert opinion testimony that was not properly disclosed

because Vincer was tendered as a lay witness under Illinois Supreme Court Rule 213(f)(1) (eff. Jan. 1, 2018).

¶ 14    Ultimately, the trial court held that the parties' actions created a contract implied in fact for the additional services. In reaching its conclusion, the trial court determined that the parties' written contract was clear and unambiguous and that parole evidence was, consequently, inadmissible to determine the scope of the work required under that contract.

¶ 15    The trial court determined that ESP was entitled to 10% of Northwest's actual savings as a result of the Sodexo contract for a five-year period and entered judgment in favor of ESP for $194,159.43.

¶ 16    We note that the trial judge made ambiguous comments as to whether she was calculating ESP's damages based on 10% of Northwest's actual savings for a five-year period or the two-year, nine-month period that ESP had requested. Having observed that the amount of damages awarded reflects the two-year, nine-month period requested by ESP, however, we find that the court's calculation of damages was limited to the lesser period. This conclusion is further supported by the trial court's postjudgment order, which granted ESP leave to amend its complaint to request damages that accrued during trial and also stated that ESP's "claim for damages for savings realized from September 2017 through November 2019 are not yet ripe as such savings had not yet been realized prior to trial and, therefore, had not yet accrued as of trial."

¶ 17    This appeal followed.

¶ 18                                    II. ANALYSIS
¶ 19                                 A. Northwest's Appeal
¶ 20    The first issue before us is whether an RFP was included in the parties' written contract. It is well settled that the interpretation of a contract involves a question of law, which we review *de novo*. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005); see also *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 37.

¶ 21    The primary objective in construing a contract is to give effect to the parties' intent at the time the contract was made, which is best determined from the plain language of the contract. *Insurance Benefit Group, Inc.*, 2017 IL App (1st) 162808, ¶ 38. Where, as here, the contract's terms are clear and unambiguous, the parties' intent must be determined exclusively from the express language of the contract, giving the words employed their plain and ordinary meaning. *Id.* Furthermore, we will not interpret a contract in a manner that would nullify or render provisions of it meaningless or in a way that is contrary to the plain and obvious meaning of the language employed. *Id.*

¶ 22    Initially, we note that Northwest concedes in its brief that "[a] review of the plain language of [the contract] supports the circuit court's finding of no ambiguity." Northwest argues instead that the plain language of the parties' contract unambiguously provides for an RFP where Exhibit A clearly "refers to an RFP process." We find Northwest's argument unavailing.

¶ 23    Here, the parties' contract states that "ESP agrees to assist Client in the provision of those services identified in Exhibit A of this Agreement," none of which provide for an RFP. More importantly, their contract expressly states that "the Client may choose to hire ESP to provide services outside the scope of this agreement," including, "[d]rafting a procurement document,

such as an RFP." Based on the plain language of the parties' contract, we cannot say that they intended to include an RFP as part of that contract.

¶ 24    Furthermore, to the extent Northwest asserts that Exhibit A "refers to an RFP process," this interpretation contravenes the express language of the parties' contract, stating that "an RFP" is "outside the scope of this agreement." We therefore conclude that an RFP was not included in the parties' written contract. Accordingly, the trial court correctly determined that ESP was not required to complete an RFP under their contract.

¶ 25    We also reject Northwest's argument that the parties were precluded from entering into an oral agreement for an RFP pursuant to their contract's integration clause. That clause states:

> "This Agreement constitutes the entire agreement between Client and ESP concerning the subject matter hereof and supersedes all prior and contemporaneous agreements between the Parties. Only an instrument in writing that expressly refers to this Agreement and specifically states that it is intended to amend it may amend this Agreement."

As set forth above, an RFP was "outside the scope" of the parties' contract. Therefore, the terms of that contract, including the integration clause, did not apply to the parties' subsequent oral agreement for an RFP.

¶ 26    Accordingly, we conclude that the parties' agreement for an RFP was not required to be in writing.

¶ 27    Next, Northwest contends that the trial court erroneously found that a contract implied in fact existed between the parties for the additional services because there was insufficient evidence showing the parties' intent to be bound. Whether the parties intended to enter into a contract is a question of fact to be determined by the trial court. *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 35. As such, we will not reverse the trial court's judgment unless it is against the manifest weight of the evidence. *Id.* A trial court's judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the judgment is unreasonable, arbitrary, or not based on the evidence. *Id.* ¶ 37.

¶ 28    The elements of a contract implied in fact are an offer, acceptance, and consideration. *Id.* ¶ 42. Like an express contract, there must be a meeting of the minds for the implied contract to be valid. *Id.* ¶¶ 42-43. Unlike an express contract, however, acceptance of a contract implied in fact can be proven by circumstances demonstrating that the parties intended to be bound. *Id.* ¶ 43. After reviewing the record in this case, we cannot say the trial court's finding that a contract implied in fact existed between the parties was against the manifest weight of the evidence.

¶ 29    Here, the parties' written contract states that an RFP was an additional service outside the scope of their contract. After agreeing to the terms of that contract, Northwest nevertheless procured an RFP from ESP when Hartke e-mailed Higgins, requesting "the use of a third party to assist [Northwest] in the RFP process." Higgins forwarded that request to Vincer, asking if ESP could "help *** with this request from our COO?" And if so, "[h]ow long will it take to prepare something?" Those e-mails indicate an offer from Northwest to hire ESP for assistance with an RFP. Thereafter, ESP accepted Northwest's offer when Vincer agreed to prepare an RFP draft and then sent that draft to Higgins. Furthermore, both Higgins and Vincer testified

that ESP agreed to assist Northwest with an RFP in exchange for 10% of Northwest's savings over a five-year period. More importantly, at no point did Northwest reject ESP's work.

¶ 30 In light of this evidence, we find that the circumstances and actions of the parties demonstrated a mutual intent to contract. Accordingly, we find there is sufficient evidence to support the trial court's ruling that a contract implied in fact existed between the parties.

¶ 31 For the reasons discussed below, we reject Northwest's alternative claim that ESP's damages award must be reduced because the trial court erroneously relied on the parties' joint exhibit in calculating the award. We note, however, that Northwest has failed to develop a legal argument in its appellate brief, asserting that Northwest stipulated to the admissibility of the joint exhibit but not the merits of and sums calculated therein, as required by Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 32                              B. ESP's Cross-Appeal

¶ 33 We now turn to ESP's cross-appeal. ESP first contends that the trial court improperly excluded evidence of ESP's damages when the court struck portions of Vincer's testimony on the basis that it constituted undisclosed expert opinion testimony pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018). Where a trial court's evidentiary ruling requires the interpretation of a supreme court rule, our review is *de novo*. *Porter v. City of Chicago*, 393 Ill. App. 3d 855, 857 (2009).

¶ 34 As previously stated, ESP tendered Vincer as a Rule 213(f)(1) lay witness. Rule 213(f)(1) permits a lay witness to give "fact or lay opinion testimony," provided that the offering party has identified "the subjects on which the witness will testify." Ill. S. Ct. R. 213(f)(1) (eff. Jan. 1, 2018).

¶ 35 ESP's Rule 213(f)(1) disclosures to Northwest stated that Vincer may testify regarding "the estimated and actual savings of [Northwest] as a result of [ESP's] efforts and performance under the Letter of Agreement and Additional Services Contract." They further stated that Vincer may testify regarding "[ESP's] damages as a result of [Northwest's] breach of the Letter Agreement and Additional Services Contract," as well as "the value of the work performed by [ESP] for [Northwest]."

¶ 36 Here, Vincer testified regarding ESP's claimed damages. Specifically, he testified that, to determine Northwest's actual savings, ESP calculated the difference between Northwest's equipment maintenance costs before and after the Sodexo contract. Thus, Vincer's testimony involved a mathematical calculation based on the baseline number that was included in the parties' joint exhibit and received into evidence by stipulation. Given the foregoing, we cannot say that Vincer's testimony exceeded the scope of Rule 213(f)(1) fact or lay opinion testimony or that it was not properly disclosed.

¶ 37 We therefore conclude that the trial court improperly struck the portions of Vincer's testimony that the court found constituted Rule 213(f)(3) expert opinion testimony. Accordingly, we reverse the trial court's ruling limiting Vincer's testimony as it related to ESP's damages on that basis.

¶ 38 Next, ESP contends that the trial court erred by failing to include 10% of the $400,000 cash incentive Northwest received from Sodexo in the court's damages calculation. We will not disturb a trial court's assessment of damages unless it is manifestly erroneous, *i.e.*, when the trial court ignores the evidence or uses an incorrect measure of damages. *Sterling Freight*

*Lines, Inc. v. Prairie Material Sales, Inc.*, 285 Ill. App. 3d 914, 917-18 (1996). Additionally, an award of damages is not manifestly erroneous if there is an adequate basis in the record to support the trial court's determination of damages. *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13.

¶ 39    Based on our review of the record, we cannot say that the trial court's damages award is manifestly erroneous because it did not include damages for the Sodexo cash incentive. Notably, ESP correctly observes that "[t]he trial court did not articulate a basis for excluding this additional line item of ESP's damages." In any event, the record supports the trial court's award of damages to ESP. Instead, we find that the trial court's assessment of damages may be insufficient because the court excluded relevant evidence in calculating ESP's damages, as set forth above. Because we reversed the trial court's ruling limiting Vincer's testimony, we direct the trial court on remand to consider ESP's claim that it is entitled to 10% of the Sodexo cash incentive from Northwest. Furthermore, in the interest of judicial economy, we direct the trial court to allow ESP to amend its request for damages to include 10% of Northwest's actual savings for the entire five-year period, which has now passed.

¶ 40                                    III. CONCLUSION

¶ 41    In sum, we affirm the trial court's judgment in favor of ESP. We reverse and remand for a hearing to determine whether ESP is entitled to additional damages from Northwest. On remand, we direct the trial court to allow ESP to amend its request for damages to reflect the entire five-year period. We also direct the court to consider Vincer's testimony that had previously been stricken. Last, we direct the court to consider whether ESP is entitled to 10% of the $400,000 cash incentive Northwest received from Sodexo.

¶ 42    Affirmed in part and reversed in part.

¶ 43    Cause remanded with directions.