2026 IL App (1st) 250919-U

FIRST DIVISION
March 9, 2026

No. 1-25-0919

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SMART PLASTICS, LLC and SMART PLASTICS II, LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs/Counter-Defendants-Appellees, | ) ) | |
| v. | ) ) | No. 22 L 11206 |
| ROBERT S. ABRAMS, | ) ) ) | Honorable Patrick J. Sherlock, |
| Defendant/Counter-Plaintiff-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County striking defendant's jury demand, striking defendant's affirmative defenses of waiver of estoppel, rejecting defendant's affirmative defense of unconscionability, and finding in favor of plaintiffs on plaintiffs' complaint to enforce a promissory note and against defendant on a counterclaim of breach of contract.

¶ 2    Plaintiffs, Smart Plastics, LLC and Smart Plastics II, LLC (Smart Plastics) filed a complaint for breach of a promissory note against defendant, Robert S. Abrams. Defendant initially filed a petition to remove the case to federal court on diversity grounds. In April 2023, after considering the petition for removal, a district court judge remanded the case to the circuit court of Cook County and terminated the proceedings in federal court.

¶ 3    On May 23, 2023, two attorneys filed two separate general appearances with the Clerk of the Circuit Court on behalf of defendant in this case. Neither general appearance form filed by the two attorneys checked the box on the form indicating the party was demanding a jury trial and neither attorney paid a jury fee. Defendant subsequently filed an answer to the complaint which demanded trial by jury, raised affirmative defenses, and stated counterclaims. However, defendant never paid the required jury fee.

¶ 4    Plaintiff filed a motion to strike the jury demand which the trial court granted. The court also granted plaintiffs' motion to dismiss two of defendant's affirmative defenses. Following a bench trial, the trial court entered judgment in favor of plaintiffs on their breach of promissory note claim and judgment against defendant and in favor of plaintiffs on defendant's counterclaim for breach of a contract underlying the issuance of the promissory note. Defendant appeals the order striking the jury demand, striking two of defendant's affirmative defenses, denying defendant's affirmative defense of unconscionability of the promissory note, and entering judgment against defendant on his counterclaim.

¶ 5    For the following reasons, we affirm the trial court's judgment.

¶ 6                                 BACKGROUND

¶ 7    Defendant, Robert S. Abrams, was the manager of CV Holdings, L.L.C., a Delaware limited liability company (CVH). Defendant held a majority interest in CVH and owned all of the Class A common interests of the company. Plaintiffs were members of CVH and held a minority interest in the company in the form of preferred interests. CVH was governed by an operating agreement. CVH was the parent company of several subsidiaries. One such subsidiary made and sold proprietary glucose test strips used by diabetics. After demand for CVH's test strips greatly diminished, CVH lost a significant portion of its revenue and faced the prospect of

going out of business. Defendant, as manager, began to look for a buyer for CVH. Defendant secured an offer to purchase all of the interests in CVH for approximately $360 million. Time was of the essence for the sale, which required the consent of all of CVH's members, including its five minority owners holding preferred interests, like plaintiffs.

¶ 8 On November 12, 2014, defendant sent a letter to plaintiffs stating the terms of the sale and asking plaintiffs to sign a purchase agreement. At the time, CVH held an option to purchase all of the stock of a separate company, SiO2 Medical Products, Inc., for $1.00. Defendant was the sole owner of SiO2. The November 12, 2014, letter stated that before the sale closed, CVH would reorganize and cancel its option on SiO2, and defendant would reduce the amount he would otherwise be entitled to receive as a result of the sale. The letter estimated the value of the option on SiO2 to be approximately $26-$30 million. The letter also requested that plaintiffs waive a clause in the "Go-Along Provision" in the operating agreement that gave plaintiffs the right to request an opinion on the fairness of the proposed sale from a financial perspective, and included an agreement to amend the operating agreement accordingly. Finally, the letter asked plaintiffs to waive any claims of breach of fiduciary duty against defendant based on the sale.

¶ 9 The letter stated that "the [sale] is being effected in accordance with the Go Along Provision set forth in section 14.4 of the *** Operating Agreement of the Company." The letter proposed that "Section 14.4(a) of the LLC Agreement is hereby amended to waive the option of the *** Preferred Members to obtain any additional opinions or material with respect to the [sale."]. The letter stated that by signing and returning the letter its "shall become a binding agreement between the Company, the Class A Common Representative and the undersigned Member."

¶ 10    The "Go-Along Provision" in section 14.4 of the operating agreement reads, in pertinent part, as follows:

"[E]ach Class B Common Member and Preferred Member agrees for the benefit of the Company and the Class A Common Member that if (i) the Class A Common Members shall propose to consummate any sale of all of the Class A Common Interests held by them ***and (ii) at the option of the Class B Common Members and the Preferred Members, [they] shall have received from a nationally recognized investment banking firm or public account firm, selected by [them] and not affiliated with [them] and not otherwise involved in the proposed sale, a written opinion *** stating that the consideration or net proceeds to be received by such Class B Common Members and Preferred Members in connection with such proposed sale is fair to such Class B Common Members and the Preferred Members from a financial point of view, then *** each Class B Common Member and Preferred Member shall be obligated severally to dispose of all its *** Interests to the Go-Along Person on the same terms and conditions as the Class A Common members *** and to take any actions reasonably requested by the Class A Common Members necessary or desirable to effect such proposed sale ***."

¶ 11    Based on the interests plaintiffs held in CVH, plaintiffs would receive approximately $17.5 million as a result of the sale. Defendant asked plaintiffs to respond within two days.

¶ 12    After receiving the November 12 letter, plaintiffs' representative, Boufis, began negotiating with defendant. Boufis ran the private equity group that formed Smart Plastics to invest in CVH and Boufis later became a member of Smart Plastics. On November 17, 2014, Boufis emailed defendant as "part of the negotiations *** where [Boufis] and [defendant] were

discussing what [Boufis] believe[d] Smart Plastics should receive from the sale." Boufis's November 17 email offered "two exit scenario options I believe should work for either you [(defendant)] and the [Smart Plastics] investors." One option increased the cash consideration from the sale from approximately $17 million to $22 million and the other option maintained the cash consideration around $17 million but retained an interest in SiO2. Neither included additional cash from defendant personally. On November 18, 2014, defendant wrote to plaintiffs and in exchange for agreeing to the terms stated in the November 12 letter, including waiving the option in SiO2, waiving any claims against defendant, and waiving the fairness opinion, defendant would personally sign a promissory note in favor of plaintiffs for an additional $5,366.589 in addition to the $17.5 million from the sale. Boufis testified that defendant's November 18 letter resulted from his conversations with defendant. Plaintiffs agreed and provided defendant the necessary signatures. After plaintiffs consented to the sale, defendant obtained the final two consents needed to complete the sale. The sale of CVH proceeded and plaintiffs received $17.5 million from the sale.

¶ 13    After an agreed upon extension, the promissory note had a maturity date of October 1, 2015. The parties also modified the note to remove a pledge of SiO2 stock as security. At trial, Boufis testified about "conversations in the summer of 2019 where [defendant] *** asked to forbear collection of [the] note." Boufis testified that defendant "said he didn't have the economic means to service the loans." Boufis testified: "We said, 'look, it's been a number of years. Can you at least begin to service it, pay something?' At which point [defendant] said he didn't have the economic means to do it, and we said, 'Can you sort of help me validate that?' " Later, on redirect examination, Boufis testified that when he met with defendant "in 2018 and 2019, defendant told Boufis, " 'Don't worry. I'm going to pay you.' " When asked whether

"that's why the lawsuit wasn't filed earlier," Boufis responded, "I trusted him, yes, sir."

Plaintiffs took no further action until December 19, 2022, when plaintiffs filed the complaint in this case.

¶ 14    On May 23 2023, defendant's attorneys filed a "General Appearance" on a circuit court of Cook County "Appearance/Jury Demand" form. Defendant's attorneys "checked the box" labeled "Appearance—Fee Paid." However, the attorneys did not check the box labeled "Appearance & Jury Demand" to indicate defendant demanded a jury trial or that defendant paid the required jury fee.

¶ 15    On August 3, 2023, plaintiffs filed a First Amended Complaint For Breach Of Promissory Note. (Plaintiffs' stated purpose for filing the amended complaint was to allege facts demonstrating consideration for the note based on defendant's motion to dismiss the original complaint. Consideration for the note is not at issue in this appeal.) Plaintiffs' first amended complaint alleged, as it pertains to this appeal, that "[t]he consideration given for *** [the] note, *** included Plaintiffs' signing and delivery of" the November 12 and 18, 2014 letters, and plaintiffs' "signatures on the proposed purchase agreement." Plaintiffs alleged that by signing the November 12 and 18 letters and purchase agreement, "Plaintiffs accepted Defendant's offer" in the November 18, 2014 letter, committed to the sale of CVH, and "[w]aived rights under the CV Holdings operating and other agreements, including a right to a fairness opinion;" "[a]pproved a stated range value for SiO2" and "[c]onsented *** to the proposed pre-closing termination/transfer to Defendant of a CV holdings option to acquire ownership of SiO2, and refrained from demanding interests in assets proposed to be transferred by CV Holding to Defendant;" "[c]onsented *** to treating the proposed sale transaction as a 'Go Along' transaction;" and "[p]romised to authorize legal fees and to indemnify Defendant *** and to

release Defendant regarding the closed sale transaction as well as regarding his pre-sale operation of CV Holdings and its pre-closing restructuring."

¶ 16    On September 15, 2023, defendant filed an Answer, Affirmative Defenses, And Counterclaims To Plaintiffs' First Amended Complaint. On December 21, 2023, defendant filed an Amended Answer, Affirmative Defenses, And Counterclaims To Plaintiffs' First Amended Complaint. On January 18, 2024, plaintiffs filed a motion pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)) to dismiss defendant's amended affirmative defenses and counterclaims. On April 3, 2024, the trial court entered a written order, based on the parties' pleadings, on plaintiffs' motion to dismiss defendant's affirmative defenses and counterclaims.

¶ 17    As it pertains to this appeal, the trial court denied plaintiffs' motion to strike defendant's fourth affirmative defense of unconscionability and granted defendant leave to replead, *inter alia*, affirmative defenses of estoppel and waiver "with relevant factual rather than conclusory allegations for each separate and distinct equitable theory." The court found that defendant adequately pleaded defendant's first counterclaim for breach of the "Go Along Provision" in the operating agreement; and dismissed defendant's fifth counterclaim based on the implied covenant of good faith and fair dealing because it was unclear whether defendant was "attempting to plead a breach of contract claim or arguing that plaintiffs breached the covenant of good faith and fair dealing embedded in every contract."

¶ 18    On May 31, 2024, defendant filed his Second Amended Answer, Affirmative Defenses, And Counterclaims To Plaintiffs' First Amended Complaint. Defendant's Second Amended Counterclaims repleaded the same counterclaim for breach of the implied covenant of good faith and fair dealing in the operating agreement that the trial court had dismissed "to preserve it for a

reviewing court." On June 21, 2024, plaintiffs replied to defendant's affirmative defenses and answers and filed affirmative defenses to defendant's counterclaims in defendant's second amended answer, affirmative defenses, and counterclaims; and plaintiffs filed a separate motion pursuant to section 2-615 of the Code to dismiss defendant's third, fourth, fifth, and sixth affirmative defenses.

¶ 19 Plaintiff's motion to dismiss defendant's second amended affirmative defenses argued, as it pertains to this appeal, that defendant failed "to follow the Court's instructions" when repleading, *inter alia*, the affirmative defenses of estoppel (defendant's third affirmative defense) and waiver (defendant's fourth affirmative defense) because defendant failed "to allege facts supporting the elements of each of those defenses."

¶ 20 On August 26, 2024, the trial court entered a written order on plaintiffs' motion to dismiss defendant's affirmative defenses. As it pertains to this appeal, the trial court agreed with plaintiffs that defendant's "affirmative defense of estoppel fails to allege factual particularity as it relates to either any statement or conduct which constitutes a misrepresentation and which [defendant] relied upon to his detriment." The court concluded that defendant "pled no facts to support his conclusion that [he] 'adversely changed his position' assuming that plaintiff[s] would not seek to enforce the terms of the Note" and granted plaintiffs' motion to strike defendant's third affirmative defense. The court also granted plaintiffs' motion to strike defendant's fourth affirmative defense of waiver. The court found that defendant failed to allege any facts in support of his wavier defense. The court found that defendant's fourth affirmative defense of waiver "contains no facts that would constitute anything close to the conduct which would constitute an intentional, knowing relinquishment of the right to enforce the note." The court found that defendant's allegations "fall[] short of establishing a viable waiver affirmative defense. ***

Merely alleging that certain conduct of delaying assertion of rights constitutes a waiver is insufficient as a matter of law."

¶ 21   On November 4, 2024, plaintiffs filed a Motion To Strike Defendant's Jury Demand. Plaintiffs' motion moved to strike defendant's jury demand "contained in his pleadings" but argued that defendant "did not pay a jury fee when his initial pleading was filed as required by 735 ICS 5/2-1105." Plaintiffs argued that unless defendant can show timely payment of the jury fee defendant it not "entitled" to a jury and "the case must be tied by the court" pursuant to 705 ILCS 105/27.1b(e).

¶ 22   On November 21, 2024, defendant filed a response to plaintiffs' motion to strike defendant's jury demand. Defendant's response had attached a "Declaration of Timothy R. Farrell As to [Defendant's] Jury Demand ('Farrell Declaration')," and incorporated the factual assertions and legal arguments in the declaration into defendant's response to plaintiffs' motion to strike defendant's jury demand. The response concluded: "Although law cited in the Farrell Declaration indicates that no additional fees are required under these circumstances for the assertion of [defendant's] jury demand, [defendant] is ready and willing to pay whatever fee the Cook County Circuit Clerk requires." Farrell was one of defendant's former attorneys who, in October 2024, received leave to withdraw as defendant's counsel. The declaration stated that defendant has asserted his jury demand "numerous times in his pleadings, and his jury demand was never met with any objection or motion to strike by Plaintiffs."

¶ 23   The Farrell Declaration recounts defendant's effort to remove this case to federal district court and states that defendant demanded trial by jury in that court, which does not require a jury fee with the filing of a jury demand. When the federal district court remanded the case to the circuit court of Cook County, defendant's attorneys filed general appearances because plaintiffs

had not requested a jury and there was "no pleading yet due" by defendant. Defendant then moved to dismiss plaintiffs' complaint but withdrew the motion when plaintiffs received leave to amend and filed their first amended complaint. Thereafter, defendant filed his answer, affirmative defenses, and counterclaims and included a jury trial demand in defendant's counterclaims. Defendant's then-attorneys did not file an amended appearance; "[n]evertheless, the clerk of the Circuit Court accepted the Counterclaim including the Jury Trial Demand as filed." Plaintiffs then moved to dismiss the counterclaims but "did not move to strike Defendant's jury demand with the motion." Defendant obtained leave to file an amended answer, affirmative defenses, and counterclaims and "again included his Jury Trial Demand." Again, plaintiffs moved to dismiss, and again "did not move to strike Defendant's jury demand with that motion." After the ruling on that motion defendant filed a second amended answer, affirmative defenses, and counterclaims which included a jury trial demand. Plaintiffs replied to the second amended answer, affirmative defenses, and counterclaims, but "did not include a reply to, address, or even copy over from the Second Amended Counterclaim, Defendant's jury demand." Plaintiffs' subsequent motion to strike certain affirmative defenses did not include a motion to strike defendant's jury demand.

¶ 24    Farrell asserted that defendant has maintained his jury trial demand throughout this litigation, plaintiffs pursued several motions "without ever addressing Defendant's jury trial demand," and "the Clerk of the Circuit Court of Cook County, Illinois has repeatedly accepted for filing Defendant's amended pleadings containing his jury demand." Farrell argued plaintiff had waived the issue and then attempted to frame the question as "how to treat a jury demand made in federal court on remand," then analogized that situation to a remand to the circuit court from the appellate court—at which time "[p]arties shall have the same right to a jury trial on

remand and reinstatement that they had before the appeal, and no additional or new fee or charge shall be made for a jury trial after remand." 705 ILCS 105/27.1b(i) (West 2022). Farrell did not pursue that argument further but instead implied the time for paying the jury fee should be extended pursuant to 735 ILCS 5/2-1007 and/or Illinois Supreme Court Rule 183[1]. Farrell concluded, "Plaintiffs have been on notice of Defendant's consistently asserted jury demand for many months and cannot reasonably claim inconvenience or prejudice."

¶ 25    On November 25, 2024, the trial court entered a written order on, *inter alia*, plaintiffs' motion to strike defendant's jury demand. The trial court granted the motion without comment.

¶ 26    Following a bench trial, the trial court entered judgment in favor of plaintiffs on plaintiffs' complaint for breach of the promissory note and against defendant on defendant's counterclaims. The trial court entered judgment awarding plaintiffs $12,605,353.40 as principal on the note, interest, attorney fees, and costs.

¶ 27    This appeal followed.

¶ 28                              ANALYSIS

¶ 29    This is an appeal from a judgment following a bench trial on claims for breach of contract. "A promissory note is a contract, subject to the law of contracts." 11 Am. Jur. 2d Bills and Notes § 2. "Also, generally, an LLC operating agreement is to be enforced according to

---

[1]    "On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment." 735 ILCS 5/2-1007 (West 2022).

"The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. S. Ct. R. 183 (eff. Feb. 16, 2011).

general contract principles, unless it conflicts with a statute." *In re Marriage of Schlichting*, 2014 IL App (2d) 140158, ¶ 63.

"The standard of review following a bench trial is whether the trial court's order or judgment is against the manifest weight of the evidence. [Citation.] A judgment is against the manifest weight of the evidence only when the findings appear to be unreasonable, arbitrary, or not based on evidence or when an opposite conclusion is apparent. [Citation.] *** The appellate court *** does not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to evidence, or the inferences to be drawn. [Citation.] Accordingly, the trial court's judgment will be affirmed provided the record contains any evidence supporting it. [Citation.]

However, to the extent that issues in a bench trial involve the interpretation of contracts, such rulings are conclusions of law that the appellate court reviews *de novo*. [Citations.] Factual findings pertaining to the interpretation of that contract are given deference on review and are subject to reversal only when they are against the manifest weight of the evidence. [Citation.] The primary goal of contract interpretation is to give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms. [Citation.]" *Bank of New York Mellon as Trustee for Certificateholders of CWALT, Inc., Alternative Loan Tr. 2006-OA21 Mortgage Pass-Through Certificates, Series 2006-OA21 v. Fiorentino*, 2022 IL App (1st) 210660-U, ¶¶ 29-30.

¶ 30    On appeal defendant argues (1) the trial court erred in striking defendant's jury demand, (2) the trial court erred in striking defendant's affirmative defenses of estoppel and waiver, and (3) the trial court erred in ruling against defendant on defendant's counterclaim for breach of the operating agreement.

¶ 31                                    (1) Jury Demand

¶ 32    Defendant argues the trial court abused its discretion in striking defendant's jury demand where defendant sought to pay the statutorily required jury fee after plaintiff filed a motion to strike the jury demand for non-payment. We review the trial court's judgment for an abuse of discretion. *Pechan v. DynaPro, Inc.*, 251 Ill. App. 3d 1072, 1091 (1993) ("The trial court's ruling on a motion to file a late jury demand will not be disturbed absent an abuse of discretion."). An abuse of discretion occurs when a court enters an order that no reasonable court would enter or enters an arbitrary or capricious order. *McNulty on Behalf of McNulty v. McNulty*, 2022 IL App (1st) 201239, ¶ 42.

¶ 33    The right to a jury trial is enshrined in our constitution. "The right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, § 13. However, "the Constitutional right of trial by jury in civil actions at law is one which may be waived unless a written demand for trial by jury is filed pursuant to the provisions of the statute." *Wickiser v. Powers*, 324 Ill. App. 130, 138 (1944). "A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his or her answer. Otherwise, the party waives a jury." 735 ILCS 5/2-1105(a) (West 2022). Additionally, the Clerks of Courts Act provides that:

> "The clerk shall collect *** a sum not to exceed $212.50, as a fee for the services of a jury in every civil action not quasi-criminal in its nature and *** in every other action wherein the right of trial by jury is or may be given by law. The

jury fee shall be paid by the party demanding a jury at the time of filing the jury demand. If the fee is not paid by either party, no jury shall be called in the action or proceeding, and the action or proceeding shall be tried by the court without a jury." 705 ILCS 105/27.1b(e) (West 2022).

¶ 34    Defendant argues he complied with section 1105(a) of the Code but admits he did not comply with section 27.1b(e) of the Clerks of Courts Act which requires payment of the fee at the time the jury demand is filed. Defendant argues the trial court abused its discretion by not allowing defendant to come into compliance with section 27.1b(e) by making a late payment of the jury fee. First, defendant argues the trial court had the discretion to allow the late payment of the fee. Second, defendant argues that the trial court abused that discretion in ruling on plaintiffs' motion to strike defendant's jury demand because (i) late payment of the fee would not have caused prejudice to plaintiffs' rights, (ii) late payment of the fee would have imposed no inconvenience on the parties or on the trial court, and (iii) defendant showed good cause to make late payment.

¶ 35    In *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90 (1978), the defendant argued that the plaintiff "waived his right to a jury trial by not filing a demand therefore at the time that the action was commenced." *Id*. at 94. The *Hernandez* court discussed the right to trial by jury and the power of the trial court to grant additional time "for the doing of any act." The court found:

> "[G]ood cause must be established in order to obtain an extension of time
> in which to file a late jury demand. ([Citation.]) In addition to the requirement of
> good cause, the court will consider inconvenience to the parties and the court, and
> any possible prejudice to the rights of the opposing party. ([Citation.]) The

decision is made in the discretion of the trial court, and its decision will not be reversed unless there is an abuse of discretion. ***

Because the right to jury trial is of constitutional dimension, courts will liberally construe statutes which regulate exercise of the right. '(T)he inclination of the court should be to protect and enforce the right.' [Citations.]" *Hernandez*, 73 Ill. 2d at 95.

¶ 36 The *Hernandez* court wrote: "Once the plaintiff established good cause for an extension of time in which to demand a jury trial, the trial court, in its discretion, could nonetheless deny the motion." *Hernandez*, 73 Ill. 2d at 97. "In the exercise of that discretion," the trial court should consider "the fact that a constitutional right [is] at stake" and the presence or absence of any "inconvenience or prejudice *** if the motion [is] granted." *Id*. The court cautioned, however, that "[t]he standard of review on appeal is not whether the appellate court would have allowed the motion, but whether the action was a reasonable exercise of sound discretion. [Citation.]" *Id*. at 95.

¶ 37 In this case, defendant argues that he showed good cause "to make a late payment" because plaintiffs forfeited the issue by not raising it sooner, plaintiffs only moved to strike the jury demand after defendant discharged his former counsel (who failed to tender the fee) and the actions of defendant's former counsel "show mistake, inadvertence or neglect," and because given the constitutional nature of the right at issue the trial court should have "jealously guarded" that right by liberally construing the statutes to allow late payment of the fee. Defendant also argues that a late payment would have "comported squarely with the purpose of the pertinent statutes."

¶ 38    Plaintiffs do not dispute that a trial court has the discretion to allow the late payment of a jury fee. However, plaintiffs argue that defendant "never made a threshold showing of 'good cause,' " therefore, the trial judge's "discretion to consider allowing a late filed jury demand was never invoked.

¶ 39    Plaintiffs respond that defendant's response to plaintiffs' motion to strike defendant's jury demand "never argued how or why he had 'good cause' to cure his failure to properly demand a jury" nor does the Farrell Declaration "even attempt to establish 'good cause.' " Plaintiffs argue that even if defendant's response to plaintiffs' motion to strike is construed as a motion "to file and pay for a late demand, [defendant] did not show 'good cause.' " Plaintiffs argue that defendant did not argue that his former attorney "made a mistake or inadvertently failed to pay the requisite fee." Regardless, plaintiffs argue, this court may deny a jury demand "when the excuse for failing to act is misapprehension of the facts, mistake, and inadvertence."

¶ 40    The *Hernandez* court found that "[t]he absence of inconvenience or prejudice *** does not alone establish good cause. The moving party must assert some independent ground for granting his late demand." *Hernandez*, 73 Ill. 2d at 96. The court's opinion in *Hernandez*, which itself found its earlier decision in *Stephens v. Kasten*, 383 Ill. 127 (1943), "instructive as to what constitutes good cause" (*Hernandez*, 73 Ill. 2d at 96), instructs that a court should determine each case "on its own facts" (*id*. at 99) to determine the fairness to the party seeking a jury of denying a late jury demand. See *id*. at 96-97.

¶ 41    Additionally, plaintiffs cite *First Bank of Oak Park v. Carswell*, 111 Ill. App. 3d 71 (1982), and *Pechan*, 251 Ill. App. 3d 1072, in support of their position. In *Pechan*, the court found that "[a] showing of lack of prejudice is not a showing of good cause. ([Citation.]) Neither is inadvertence a basis for good cause. ([Citation.])." *Pechan*, 251 Ill. App. 3d at 1091. The

*Pechan* court cited *Greene v. City of Chicago*, 73 Ill. 2d 100 (1978), in which the motion for leave to file a late jury demand explicitly stated that "the failure to file a jury demand with [the] defendant's original pleading was the result of 'inadvertence and oversight of the assistant corporation counsel who was handling the case at that time.' " *Id.* at 104. The trial court denied the motion for leave to file a late demand for jury trial. *Id.* at 104. Our supreme court found that, "[i]n this instance the allegation that the failure to file the demand was the result of inadvertence of an assistant corporation counsel does not furnish the basis for holding that the trial court abused its discretion." *Greene*, 73 Ill. 2d at 108.

¶ 42    In *First Bank of Oak Park*, a case involving an action for forcible entry and detainer, the defendant was required "to file his jury demand by the time he [was] required to appear," "which he did not do." *First Bank of Oak Park*, 111 Ill. App. 3d at 72-73. The defendant "blame[d] his previous attorney for his failure to appear [(and file a jury demand)] *** and claim[ed] that he acted with alacrity" thereafter. *Id.* at 73. The court found:

> "Our system of representative litigation has developed the general rule that the acts or omissions of an attorney are binding upon his client in the conduct of legal matters. ([Citations.]) No excuse has been offered or suggested in the present case as to why no appearance was filed by [the] defendant's attorney within the prescribed period. Nor has there been any showing that good cause existed for his failure to request a jury trial in apt time, a burden which [the] defendant] bore in the case before us. [Citation.]" *First Bank of Oak Park*, 111 Ill. App. 3d at 73.

¶ 43    The defendant in *First Bank of Oak Park* cited our supreme court's decision in *Hudson v. Leverenz*, 10 Ill. 2d 87 (1957), in support of his position. However, the *First Bank of Oak Park*

court found that the *Hudson* court found "that 'misapprehension of the facts, mistake, and inadvertence' did not constitute sufficient 'good cause' to excuse the seasonable filing of a jury demand." *First Bank of Oak Park*, 111 Ill. App. 3d at 74 (citing *Hudson*, 10 Ill. 2d at 93). The *First Bank of Oak Park* court found that by "by alleging only personal ignorance and the negligence of counsel, whose acts or omissions are binding upon him, it appears that [the defendant] merely has alleged the same misapprehension of facts, mistake, and inadvertence that the supreme court dismissed as insufficient in *Hudson*." *Id.*

¶ 44     In *Hudson*, our supreme court noted that the parties were represented when the case was placed on the nonjury calendar and the request for a jury was made shortly before the trial date. *Hudson*, 10 Ill. 2d at 94 (distinguishing *Stephens*, 383 Ill. at 135). The *Hudson* court found the fact

> "[t]hat the plaintiffs would be inconvenienced by the delay was not disputed, nor did the defendants advance any reason or 'good cause' other than to say their failure resulted from 'misapprehension of the facts, mistake and inadvertence.' On this record, we do not believe the trial judge abused its discretion in refusing the request for a jury trial. The defendants failed to comply with [now section 2-1105 of the Code,] and they do not show why their failure should be excused under [now section 2-1007 of the Code] and [now Rule 183] of this court." *Hudson*, 10 Ill. 2d at 94.

¶ 45     In this case, defendant's reply asserts that "inadvertence constitutes good cause" and for support relies on *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007), and *Domino v. Maltezos* 2012 IL App (1st) 103599-U. Defendant argues that *Vision Point of Sale, Inc.* "opened the door to inadvertence as good cause," and *Domino* "walked through it." In *Vision Point of*

*Sale, Inc.*, our supreme court held that "in determining whether good cause exists under Rule 183 to support an extension of time allowing a party to comply with a deadline set forth in our rules, the circuit court may not take into consideration facts and circumstances in the case that go beyond the reason for noncompliance." *Vision Point of Sale, Inc.*, 226 Ill. 2d at 336. Our supreme court addressed a line of appellate authority establishing, in effect, that "unless the [moving] party can present evidence separate and apart from mistake, inadvertence, or attorney neglect to support an argument that there was good cause for the initial delay in compliance, the extension will not be granted." *Id*. at 349.

¶ 46    The *Vision Point of Sale, Inc.* court stated that its earlier decision in *Bright v. Dicke*, 166 Ill. 2d 204 (1995), "did not hold—as the appellate court subsequently has—that there is a blanket rule that mistake, inadvertence, or attorney neglect on the part of the moving party can never form the basis of a good-cause argument that a Rule 183 time extension should be granted." *Vision Point of Sale, Inc.*, 226 Ill. 2d at 350-51. The court concluded:

"The circuit court has the sound discretion to consider all objective, relevant evidence presented by the delinquent party with respect to why there is good cause for its failure to comply with the original deadline and why an extension of time should now be granted. The circuit court may receive evidence with respect to whether the party's original delinquency was caused by mistake, inadvertence, or attorney neglect, but may not engage in an open-ended inquiry which considers conduct that is unrelated to the causes of the party's original noncompliance. We decline, however, to specifically define what constitutes good cause within this context, as that determination is fact-dependent and rests within

the sound discretion of the circuit court." *Vision Point of Sale, Inc. v. Haas*, 226

Ill. 2d 334, 353 (2007)

¶ 47    Thus, contrary to defendant's argument, we find that our supreme court did not hold that

"inadvertence is good cause." Rather, inadvertence, mistake, or attorney neglect are facts a trial

court may consider in determining whether good cause for failing to meet the deadline at issue

has been shown. *Daniel v. Meyer*, 2024 IL App (1st) 240235-U, ¶ 22 ("Mistake, inadvertence, or

neglect by the moving party's attorney may be considered in evaluating good cause."), see

*Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 67.

¶ 48    Defendant argues that in *Domino*, this court "affirmed an order accepting a late jury

demand where counsel freely admitted that he had failed to file that demand 'through pure

inadvertence.' " To suggest that this court affirmed the trial court based solely on counsel's

inadvertence is misleading. In *Domino*, this court noted the particular facts of that case, including

that the case had been voluntarily dismissed and refiled, both the plaintiff and the defendant had

made a jury demand in the original case but neither made a demand in the refiled case, the trial

court scheduled the case for a jury trial to commence the next day and itself noted the absence of

a jury demand, and the defendant filed an emergency motion for leave to file a late jury demand

on the day of trial.

¶ 49    This court found that "[u]nder these circumstances, *** the court did not abuse its

discretion in accepting the late jury demand." *Domino*, 2012 IL App (1st) 103599-U, ¶ 7. This

court found that "inadvertence by the party seeking leave (or by his counsel) is not *irrelevant* to

the determination of good cause" and additionally relied on its prior finding in another case

finding "no abuse of discretion where leave to file a late demand was based upon the court's

order scheduling a jury trial and the parties' assumption that there would be a jury trial." *Domino*,

2012 IL App (1st) 103599-U, ¶ 7. In sum, this court considered counsel's inadvertence in the specific context of that case: where counsel demanded a jury trial in the original filing, through inadvertence failed to demand a jury in the refiled case, and nonetheless the trial court scheduled the matter for a jury trial.

¶ 50     On this legal backdrop turning to this case, first, defendant's argument that plaintiffs forfeited their argument that the trial court should not allow late payment of the jury fee is inapposite. The statute requires that the fee be paid for the matter to be heard by a jury. 705 ILCS 105/27.1b(e) (West 2022) ("If the fee is not paid by either party, no jury shall be called in the action or proceeding, and the action or proceeding shall be tried by the court without a jury."). Defendant does not dispute that he did not timely pay the fee; therefore any payment of the fee would be pursuant to section 2-1007 of the Code or Rule 183. Any allowance of an extension of time would require the trial court to find good cause for the extension. *Johnson v. Sabben*, 7 Ill. App. 3d 238, 241 (1972) ("normally, a person seeking to file a late demand for a jury [pursuant to section 2-1007] is required to show good cause why the leave should be granted"), *Vision Point of Sale, Inc.*, 226 Ill. 2d at 353 ("the plain language of Rule 183 specifically makes good cause a prerequisite to relief").

¶ 51     Second, we reject defendant's argument that we should reverse the trial court's judgment because the court "gave no reasons for rejecting Defendant's effort to make a late payment." "[C]ontrary to [defendant's] suggestion, the fact that the trial court issued this ruling without explaining its reasoning *** is of no consequence. '[T]he trial court is not required to state all findings of fact relevant to its decision.' [Citation.]" *Smith v. Purple Frog, Inc.*, 2019 IL App (3d) 180132, ¶ 23 (reviewing grant of summary judgment), see *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56. Courts rely on the moving party's arguments in the

trial court to determine whether the trial court abused its discretion in denying a motion to extend the time for the doing of any act.

¶ 52 Here, defendant's response to plaintiffs' motion to strike argued that defendant's "initial jury demand was asserted in the federal district court" and "re-asserted *** numerous times in his pleadings." Defendant claimed to have preserved his right to a jury trial "with the filing of the Federal Answer." Throughout defendant's response, defendant blames plaintiffs for not moving to strike or otherwise addressing defendant's jury demand in his answer, affirmative defenses, and counterclaims sooner, and the Clerk of the Circuit Court of Cook County for accepting those pleadings without the payment of the jury fee.

¶ 53 Rather than explain his own failure to pay the jury fee, defendant's former attorney (1) made an unsupported attempt to analogize the failure of his attempt to remove the case to federal court to a remand from an interlocutory appeal to this court, which would not require an additional fee for a jury trial after remand (assuming the fee had been paid in the first place— which it was not (see 705 ILCS 105/27.1b(i) (West 2022))), (2) merely states the existence of section 2-1007 and Rule 183 without elaboration, and (3) asserts plaintiffs were on notice of defendant's jury demand "and cannot reasonably claim inconvenience or prejudice." The absence of inconvenience or prejudice to plaintiffs is irrelevant because defendant has not asserted "some independent ground for granting his late [ payment request."] *Hernandez*, 73 Ill. 2d at 96. We agree with plaintiffs that "[n]o excuse has been offered or suggested in the present case as to why no [jury fee] was [paid] by defendant's attorney within the prescribed period. Nor has there been any showing that good cause existed for his failure to [pay the fee] in apt time, a burden which the defendant bore." *First Bank of Oak Park*, 111 Ill. App. 3d at 73.

¶ 54    Defendant argues that the circumstances demonstrate good cause because he discharged his attorney who failed to pay the jury fee and that prior counsel's actions show "mistake, inadvertence or neglect." As noted above, defendant's prior attorney never claimed mistake, inadvertence, or neglect in failing to pay the jury fee. Defendant's prior counsel took the position that defendant's right to a jury trial was properly preserved or, in effect, the issue of the jury fee was procedurally forfeited. Moreover, unlike in *Stephens*, although defendant discharged his attorney who failed to pay the jury fee, there is no evidence of any divided loyalty on the part of defendant's prior attorney nor any facts provided to demonstrate that defendant was "dissatisfied" with counsel. Compare *Stephens*, 383 Ill. at 130 (in support of motion for extension of time appellants' new attorney filed an affidavit stating that the appellants nor their original attorney never "intended to waive the right to a trial by jury and that the appellants had never authorized such a waiver').

¶ 55    Furthermore, in this case, defendant's allegation that he asserted his right to a jury in federal court is unavailing. This case is not like *Pechan*, where the "mistake" at issue was a mistake in interpreting section 2-1105 of the Code when a complaint seeks both equitable and legal relief. *Pechan*, 251 Ill. App. 3d at 1091. In this case, defendant's former attorney did not contend that he misconstrued federal or state law to not require payment of the jury fee after the case was returned to state court. Defendant's former counsel properly followed Illinois law by demanding a jury in the answer but simply failed to pay the required fee. It appears that counsel developed his analogy to section 27.1(b)(i) as a means for the court to address that failure rather than a reason for it. Nor does the attempt to pursue this case in federal court make this case like the refiled action in *Domino*. The case in the circuit court of Cook County was not "refiled" and defendant does not argue the trial court ever set the matter for a jury trial. As plaintiffs' argue,

the circuit court's case summary lists the case type as "Breach of Contract—Non Jury."
Therefore, this is case is also distinguishable from *Domino*.

¶ 56    We find that the totality of the circumstances before the trial court do not demonstrate mistake, inadvertence, or neglect that this court has found sufficient to establish good cause. Defendant has not alleged a mistaken belief about the jury fee nor would such a mistake, by itself, likely be sufficient to show good cause. See *Hudson*, 10 Ill. 2d at 90, 94 (finding failure to demonstrate good cause despite fact that the attorneys averred that they erroneously assumed prior counsel had demanded a jury and another defense counsel averred that he 'was under the impression that the plaintiffs had demanded a jury trial). In *Hernandez*, our supreme court found that the "element of unfairness" in that case "constitute[d] good cause for granting [the] plaintiff's late jury demand and that, under the facts of [that] case, the trial judge abused his discretion in denying plaintiff's demand." *Hernandez*, 73 Ill. 2d at 97.

¶ 57    We find no similar "unfairness" to defendant in this case. Compare *Hernandez*, 73 Ill. 2d at 97 (noting the defendant's last minute withdrawal of his jury demand and that the plaintiff's efforts to support his late demand "were frustrated by the trial court's denial of his motion" resulting in denying the plaintiff both the benefit of an early adjudication and the advantage of a jury trial), see *Greene*, 73 Ill. 2d at 108 ("[i]n this instance the allegation that the failure to file the demand was the result of inadvertence of an assistant corporation counsel does not furnish the basis for holding that the trial court abused its discretion").

¶ 58    An abuse of discretion occurs when a court enters an order no reasonable court would enter. *McNulty on Behalf of McNulty*, 2022 IL App (1st) 201239, ¶ 42. On this record there has been no showing of good cause for failing to timely pay the jury fee on any ground. Therefore

we cannot say that no reasonable judge would enter the same order as the trial court, denying the late filing. Therefore, we do not find an abuse of discretion.

¶ 59    The trial court's judgment striking defendant's jury demand is affirmed.

¶ 60                    (2) Counterclaim for Breach of Contract

¶ 61    Next, defendant argues that plaintiffs breached the operating agreement. Defendant argues that plaintiffs breached the operating agreement, specifically the "Go Along Provision" in the operating agreement, by exercising its discretion under that provision to "go along" with defendant's proposed sale of CVH "only after extracting the $5.3 million Note from Defendant, in addition to the amount due under the Operating Agreement." Defendant does not argue that plaintiffs breached an express term of the contract (although defendant argues that plaintiffs'' alleged breach of an express term in the contract lends support to his argument), but rather that plaintiffs' conduct breached the covenant of good faith and fair dealing implied in all contracts. Defendant argues that plaintiffs' conduct was "opportunistic advantage taking" of "changed economic circumstances" in order to "reap gains in excess of those expected at the time of contracting." Defendant argues that under the circumstances, that conduct constitutes a breach of the covenant of good faith and fair dealing.

¶ 62    As previously noted, an operating agreement is to be enforced according to general contract principles (*In re Marriage of Schlichting*, 2014 IL App (2d) 140158, ¶ 63), and the standard of review following a bench trial is whether the findings of the trial court are against the manifest weight of the evidence (*Eychaner v. Gross,* 202 Ill. 2d 228, 251 (2002)). If the trial court "also construed and ruled on the legal effect of documents" (*Eychaner*, 202 Ill. 2d at 252), requiring review of the trial court's conclusions of law (see *Midwest Electronics Gaming, LLC v. Illinois Gaming Board*, 2025 IL App (1st) 241076, ¶ 25), "we apply a *de novo* standard of

review" (*Eychaner*, 202 Ill. 2d at 252). "Whether a breach of contract occurred \*\*\* is a question of fact, and the [trial] court's finding will not be disturbed on appeal unless it was against the manifest weight of the evidence. [Citation.] The elements of a breach of contract claim are (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by defendant, and (4) resultant injury to the plaintiff." *Zahdan v. Frontline Business Enterprise Inc.*, 2024 IL App (1st) 221351, ¶ 31. "A plaintiff sustains a cause of action for breach of contract for abuse of discretion based on a violation of the implied covenant of good faith and fair dealing by alleging that defendant 'exercised its discretion in a manner contrary to the reasonable expectations of the parties.' [Citation.]" *McCleary v. Wells Fargo Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 21.

¶ 63     In support of his argument, defendant relies, in part, on *RBS Citizens, National Ass'n v. RTG-Oak Lawn, LLC*, 407 Ill. App. 3d 183, 190 (2011). There, this court explained:

> "Claims revolving around a duty of good faith and fair dealing occur 'when one party is given broad discretion in performing its obligations under the contract.' [Citation.] The duty is implied in every contract and requires a party vested with contractual discretion to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of parties. [Citation.] Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract. [Citation.]" *RBS Citizens, National Ass'n*, 407 Ill. App. 3d at 190-91 (*RBS Citizens*).

¶ 64    In *RBS Citizens*, the plaintiff sued to enforce a note, and the defendants filed affirmative defenses and counterclaims based on, *inter alia*, the duty of good faith and fair dealing. *RBS Citizens*, 407 Ill. App. 3d at 185. Specifically, with regard to the duty of good faith and fair dealing, the defendants argued that the plaintiff exercised discretion to calculate interest "in a manner that charged *** more interest than [the] Defendants reasonably expected." (Internal quotation marks omitted.) *Id*. at 191. Before reaching that argument this court addressed the defendants' waiver of defenses in the parties' agreements. *Id*. at 186-87. Notably, for purposes of this appeal, this court found that "the waiver of defenses in this case was essentially part of the consideration that [the plaintiff] received in exchange for [the] agreement. To allow [the] defendants to be the sole party to enjoy the benefit of the *** agreement would be contrary to Illinois' public policy favoring the enforcement of contracts. [Citation.]" *RBS Citizens*, 407 Ill. App. 3d at 187.

¶ 65    In this case, plaintiffs respond (1) defendant forfeited the argument that plaintiffs breached the implied covenant of good faith and fair dealing, and (2) defendant and plaintiffs "negotiated the November 18 Agreement at arms-length and Plaintiffs did not breach the Operating Agreement in doing so." Plaintiffs also argue that defendant failed to introduce evidence of damages and that defendant forfeited the argument that the Go Along Provision exists for defendant's benefit. On the issue of breach, plaintiffs argue that pursuant to the Go Along Provision in the operating agreement plaintiffs could require a fairness opinion that the sale price was "fair" from an economic point of view before plaintiffs had any obligation to go along with the transaction; therefore, plaintiffs "did not have a contractual duty to 'Go Along' with whatever deal [defendant] suggested." Plaintiffs argue that the implied covenant of good

faith and fair dealing "cannot be used to overrule or modify express terms that parties are entitled to enforce."

¶ 66    We note that defendant's opening brief[2] raised the argument that plaintiffs breached an express term of the operating agreement—specifically that plaintiffs "had an obligation to act 'for the benefit' of the Company and Defendant"—as support for defendant's argument that plaintiffs breached the implied covenant of good faith and fair dealing. We construe this argument only so far as it might support defendant's argument that plaintiffs breached the operating agreement by breaching the implied covenant of good faith and fair dealing.

¶ 67    As for the argument defendant forfeited the argument that plaintiffs breached the implied covenant, defendant replies that the argument that plaintiffs breached the implied covenant of good faith and fair dealing in the Go Along Provision is an argument in support of the issue of whether plaintiffs breached the operating agreement, and cites the rule that "[w]e require parties to preserve issues or claims for appeal; we do not require them to limit their arguments here to the same arguments that were made below." *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Plaintiffs argued that defendant never "argued below that Plaintiffs breached any implied terms, much less a breach of an implied covenant of good faith and fair dealing." Defendant concedes he did not argue this theory in the trial court by arguing in his reply brief to this court that the alleged breach of the implied covenant of good faith and fair dealing is "an additional argument *** to

---

[2]    "Failure to provide argument in the opening brief results in that argument being forfeited. [Citation.] ('Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.')." *Shrock v. Meier*, 2024 IL App (1st) 230069, ¶ 11.

establish" breach of contract. (Emphasis omitted.)[3] "A party's '[f]ailure to raise an issue before the trial court forfeits review of that issue on appeal.' [Citation.]" *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 182710, ¶ 72, also see *Ontiveroz v. Khokhar*, 2023 IL App (3d) 220446, ¶ 22 ("petitioner failed to raise this specific argument in the trial court and has, therefore, forfeited this argument on appeal"), *reversed on other grounds*, 2025 IL 130316. We find defendant forfeited the issue of whether plaintiffs breached the operating agreement by breaching the covenant of good faith and fair dealing in exercising their discretion pursuant to the fairness opinion clause. We find that *Brunton* does not aid defendant.

¶ 68    In *Brunton*, the issue involved a privilege that prevented the disclosure of information obtained by an accountant. *Brunton*, 2015 IL 117663, ¶ 14. The trial court found that the accountant waived the privilege by disclosing information to a party. *Id*. ¶ 71. On appeal, it was argued that the accountant had not waived the privilege because the disclosure "was made to a party with a common interest, not to an adverse party." *Id*. ¶ 73. In response, it was argued that the accountant "forfeited the claim of common interest by not raising it in the circuit court." *Id*. ¶ 75. Our supreme court rejected the forfeiture claim, finding that the waiver issue was preserved in the lower courts. Our supreme court additionally found that, "[e]ven if he did not make a common interest argument in the circuit court, he disputed the issue of waiver." *Brunton*, 2015 IL 117663, ¶ 76. Similarly, this court, in *Cigal Concepts, Inc. v. True RCM Sols., Inc.*, 2020 IL

---

[3]    Defendant's second amended affirmative defenses and counterclaims pleaded a separate counterclaim for breach of the operating agreement based on a breach of the Go Along Provision, and repleaded the dismissed counterclaim alleging breach of the implied covenant of good faith and fair dealing "to preserve [it] for a reviewing court." Defendant's repleading of the stricken count preserved the dismissal of the counterclaim for review. *Ottawa Sav. Bank v. JDI Loans, Inc.*, 374 Ill. App. 3d 394, 399 (2007) ("A plaintiff desiring to preserve for appeal the previous dismissal of claims either must stand on the dismissed counts and challenge the ruling at the appellate level or reallege or incorporate the dismissed counts in subsequent complaints."). However, defendant did not appeal the order dismissing that counterclaim.

App (1st) 191990-U, ¶ 28. found that the plaintiff "did not raise a 'whole new theory of liability,' but merely an additional basis to establish the privity required for its breach of contract claim." *Cigal Concepts, Inc.*, 2020 IL App (1st) 191990-U, ¶ 28.

¶ 69    In this case, however, the issue of whether plaintiffs breach the implied covenant of good faith and fair dealing was not preserved in the trial court because it presents a "whole new theory" of liability. In *Slyce Coal Fired Pizza Co. v. Metropolitan Square Plaza, LLC*, 2025 IL App (1st) 221279 (*Slyce Pizza*), the plaintiff sued for breach of the parties' lease, among other theories of recovery, and the defendant counterclaimed for the plaintiff's alleged separate breaches of specific terms in the lease. *Slyce Pizza Co.*, 2025 IL App (1st) 221279, ¶¶ 44-45. In a "posttrial submission," the plaintiff argued that the defendant breached the lease "by failing to use its best efforts to jointly coordinate its work with [the plaintiff.]" *Id.* ¶ 113. On appeal, the plaintiff argued that it could not be held liable because the defendant materially breached the lease in several ways, only one being that the defendant failed to coordinate and communicate its work. *Id.* ¶ 137. The plaintiff also argued that it should not be liable on the defendant's counterclaim for its breach of the contract because the defendant "breached 'the covenant of quiet enjoyment' of the leased premises," under the "wrongful prevention doctrine" and "under either the doctrine of commercial impracticability or commercial frustration." *Slyce Pizza*, 2025 IL App (1st) 221279, ¶¶ 158-59, 165. This court found that these arguments were not presented to the trial court and were thus forfeited. *Id.* (citing *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 75 (" '"It is well settled that issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal.' "). This court did not find that the defendant's alleged breaches of implied covenants in the parties' lease were simply "arguments" in support of the "issue" of the defendant's alleged breach of the lease. This court treated those

matters as new theories of recovery that were forfeited on the ground they were not raised in the trial court.

¶ 70    In *Wiersema v. Workman Plumbing, Heating & Cooling, Inc.*, 87 Ill. App. 3d 535 (1980), the plaintiff sued the defendant for breach of a written contract to install a septic system. *Wiersema*, 87 Ill. App. 3d at 535. The trial court entered judgment "against the plaintiff and in favor of the defendant *** both on [the] plaintiff's complaint and on [the] defendant's counterclaim." *Id*. On appeal, the plaintiff questioned "whether the defendant fulfilled his obligation under and implied warranty of habitability." *Id*. at 536. The court first found that "[t]he plaintiff did not urge the applicability of the implied warranty of habitability in the trial court and raises this theory for the first time on appeal." *Id*. at 536. The court held, "We agree with the defendant's position that [the] plaintiff failed to raise the issue of the existence of an implied warranty of habitability in the trial court and accordingly should be prohibited from changing and/or adding to his theory of the case on review." *Wiersema*, 87 Ill. App. 3d at 536. See *Monday v. Ace Home Improvement Services, Inc.*, 248 Ill. App. 3d 481, 485 (1993) ("all of [the] plaintiff's contentions in support of rescission [of the contract] pertained to [a] failure to begin work in keeping with the second paragraph of clause 10. It is only on appeal that she argues her entitlement to rescind based on paragraph one. *** As [the] plaintiff did not properly advance this theory at trial, it is waived for purposes of appeal.").

¶ 71    Although the *Wiersema* court found that the applicability of an implied warranty of habitability could not be argued for the first time on appeal, the court engaged in "a limited discussion of its applicability" (*id*.) and concluded that the implied warranty should not apply because the defendant was not the builder-vendor of the home (*id*. at 537). Nonetheless, the court's latter holding is inapposite to its conclusion that the plaintiff forfeited its "theory" of

breach of contract based on the implied warranty forfeited because the plaintiff raised it for the first time on appeal. The court's latter finding is dicta. *Nationwide Advantage Mortg. Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 30 (" '*Obiter dicta*'" is defined as comments in a judicial opinion that are unnecessary to the disposition of the case."), *Barnai v. Wal-Mart Stores, Inc.*, 2021 IL App (1st) 191306, ¶ 49 ("judicial *dicta* involve an issue briefed and argued by the parties and thus 'have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court.' "). (Nothing in *Wiersema* suggests whether the defendant briefed the issue or only argued that it was forfeited.).

¶ 72     Based on the foregoing authorities we find that the breach of the implied covenant of good faith and fair dealing is a new theory of liability; and we find that defendant forfeited his claim that plaintiffs breached the implied covenant of good faith and fair dealing by failing to raise it below.

¶ 73     Forfeiture aside, we find *RBS Citizens* instructive. In *RBS Citizens*, this court found that as to the defendants' "reasonable expectations" and the plaintiff's "exercise of discretion," the court is "required to consult the Note itself." *Id*. at 191. This court concluded that "[b]ecause the Note's interest provision is unambiguous, we cannot logically find that [the] defendants' reasonable expectations were violated given that the interest computations that occurred could have been contemplated during the drafting of the contract." *Id*. This court also found that because the Note unambiguously provided for the method of computing interest, it "cannot find that [the plaintiff] exercised any degree of broad discretion as required for a claim of a breach of the duty of good faith and fair dealing," *RBS Citizens*, 407 Ill. App. 3d at 191.

¶ 74     In this case, no party has argued that the fairness opinion clause in the operating agreement is ambiguous. Further, the parties could contract for plaintiffs not to enforce the

fairness opinion clause. Traditional contract principles allow parties to modify their contract, if there is consideration to support the modification. *Doyle v. Holy Cross Hospital*, 289 Ill. App. 3d 75, 79 (1997) (citing *De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 1030 ("It was defendant who suggested the *** modification.")), see *Martin v. Federal Life Insurance Co.*, 109 Ill. App. 3d 596, 601 (1982), abrogation on other grounds recognized by *Church Yard Commons Limited Partnership v. Podmajersky, Inc.*, 2017 IL App (1st) 161152, ¶ 32 ("The essential element of consideration is a bargained-for exchange of promises or performances, and may consist of *** a forbearance, or the *** modification *** of a legal relation. (Restatement (Second) of Contracts § 71 (1981).)

¶ 75     We cannot logically find that defendant's reasonable expectation was violated given that plaintiffs' exercise of their right to a fairness opinion in the event of a proposed sale of the company, and the parties' subsequent negotiation of an agreement for plaintiffs to forbear enforcing that right, could have been contemplated during the drafting of the operating agreement. See *RBS Citizens*, 407 Ill. App. 3d at 191. Nor do we find that plaintiffs exercised "broad discretion" in this case. Compare *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 25 (the "defendant had unfettered discretion to determine a bonus amount"). The only discretion involved was whether plaintiffs would or they would not exercise their right; plaintiffs did not exercise "unfettered" discretion to determine when or how to exercise their right to a fairness opinion. Plaintiffs' decision was necessarily within defendant's reasonable expectation when the agreement was entered.

¶ 76     Furthermore, the fairness opinion was essentially part of the consideration plaintiffs received for agreeing to the Go Along Provision. To allow defendant to be the sole beneficiary of the Go Along Provision would be contrary to Illinois' public policy favoring the enforcement of

contracts. [Citation.]" *RBS Citizens*, 407 Ill. App. 3d at 187, see *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995) ("Parties to a contract, however, are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract.").

¶ 77    Defendant replies plaintiffs never actually exercised their discretionary right to a fairness opinion but instead used the threat of such an exercise to take opportunistic advantage of the circumstances to extort $5 million more than they were due under the operating agreement. The evidence at trial, wherein the trial court was "in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility , and to weigh the evidence and determine the preponderance thereof" (*Greene*, 73 Ill. 2d at 110), belies that contention. Defendant asserts plaintiffs engaged in opportunistic advantage taking simply because they sought more money than defendant offered. Defendant's argument fails to adequately consider the context of the negotiations. There is no evidence plaintiffs did not have a relevant, rational basis for their negotiations or that negotiations were unrelated to the fairness of the sale. There is evidence to the contrary.

¶ 78    At trial, Boufis provided testimony regarding his concerns with defendant's valuation and discussions with defendant regarding the sale. Boufis testified that the November 12, 2014 letter from defendant stated that plaintiffs would waive any option it had to obtain a fairness opinion "to vet or test whether what [defendant was] proposing in the November 12th letter was fair to [plaintiffs.]" Boufis testified he had conversations with defendant about the terms of the November 12th letter. Boufis testified that he communicated plaintiffs' position about the terms of the November 12 letter to defendant. Boufis summarized "a series of conversations." In sum, Boufis testified that in 2010, defendant was considering a sale of the company and at that time

Boufis constructed an economic analysis for all of the members of CVH; and "[w]hat we looked at was the 17 and a half million that was initially sort of come to." Boufis continued, "Fast forward, that is a few years later, the operating agreement allowed for an accrued interest rate of, I believe, 10 percent on the preferred note. So there was a misunderstanding because [defendant] *** didn't understand the inner working of the financial calculations." Boufis went back to defendant with a proposal as to what plaintiffs would accept "to waive the fairness opinion, grant the releases, and give consent to the CV Holdings deal." That proposal resulted in the November 18, 2014 letter as to what Boufis "proposed to go back to [defendant] with in exchange for those pieces of consideration."

¶ 79    The trial court could accept and credit Boufis's testimony. *Nelson v. Quarles & Brady, LLP*, 2018 IL App (1st) 171653, ¶ 155 ("the circuit court plainly accepted [witness's] testimony on this issue. Such a decision was within the discretion of the circuit court ***."). Based on the testimony, the trial court could find that the note resulted from plaintiffs' ability and desire to determine whether defendant's proposal was "fair" to plaintiffs from a financial standpoint, Boufis's determination of what would be "fair" to plaintiffs, and defendant's agreement to additional consideration in exchange for waiving plaintiffs' option to obtain an independent fairness opinion. Defendant argues that this court should not analyze the trial evidence because the trial court allegedly "made no effort to justify its decision." "Whether we might have reached the same conclusion is not the test of whether the circuit court's factual finding is against the manifest weight of the evidence, the appropriate test is whether there is any evidence in the record to support its finding." *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367, ¶ 12. In this case, there is evidence to support the trial court's judgment in favor of plaintiffs.

¶ 80     We also find that the Go Along Provision and the fairness opinion clause are unambiguous. "A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning. [Citation.] However, a contract is not ambiguous if the court can ascertain its meaning from the general contract language. [Citation.]" *West Bend Mutual Insurance Co. v. Athens Construction Co.*, Inc., 2015 IL App (1st) 140006, ¶ 27. There is no ambiguity created by the fact that (a) the Go Along Provision was included for the benefit for the Class A members, but (b) as a result of the fair opinion clause the Class A members may have to wait or lose a sale. There is no "conflicting language" in the operating agreement. Compare *Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, ¶ 45. The meaning of the provision is clear: the provision gave plaintiffs the discretion to obtain a fairness opinion or not. That in some circumstances the exercise of that discretion might be inconvenient to the Class A member does not make the provision susceptible to more than one meaning or indefinite in its expression. In this case plaintiffs merely negotiated with the Class A member not to exercise their contractual right. We cannot find the contract ambiguous for creating a discretionary right because that right exists for the benefit of one party. To do so in this case would nullify the provision altogether. *ESP Global, LLC v. Northwest Community Hospital*, 2020 IL App (1st) 182023, ¶ 21 ("we will not interpret a contract in a manner that would nullify or render provisions of it meaningless").

¶ 81     Plaintiffs did not act in a way that could not have been contemplated at the time the contract was drafted, destroy defendant's right to receive the benefit of the contract, nor  act inconsistently with defendant's rights under the operating agreement. Compare *Reserve at Woodstock, LLC*, 2011 IL App (2d) 100676, ¶¶ 42, 44 (the defendant violated the duty of good faith and fair dealing; city would not be allowed to "sit back and wait, to [the

plaintiff's]detriment, and then surprise [the plaintiff] by playing its 'trump card' in the eleventh hour [in defiance of] reasonable expectations."), and *McCleary*, 2015 IL App (1st) 141287, ¶¶ 22, 26 (the plaintiff adequately pleaded cause of action for breach of covenant of good faith and fair dealing where the plaintiff accused the defendant of "arbitrarily changing the length of service during the plan year to six months, \*\*\* [the plaintiff] did not reasonably contemplate this when he entered the Plan[, and] [t]his was a retroactive change that was adverse to [the plaintiff's reasonable expectation in violation of the Plan's [change] provision.").

¶ 82     Although defendant forfeited the issue, we find that plaintiffs did not breach the operating agreement by breaching the implied covenant of good faith and fair dealing.

¶ 83                          (3) Affirmative Defenses

¶ 84     Defendant argues the trial court erred in striking his affirmative defenses of waiver and estoppel. The trial court granted plaintiffs' motion to dismiss defendant's affirmative defenses pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)).

> "The facts establishing an affirmative defense must be pleaded with the same degree of specificity required by a plaintiff to establish a cause of action. ([Citation.]) A motion to dismiss an affirmative defense pursuant to section 2– 615, as with all section 2-615 motions, admits all well-pleaded facts constituting the defense, and attacks only the legal sufficiency of those facts. ([Citation.]) Where the well-pleaded facts of an affirmative defense raise the possibility that the party asserting them will prevail, the defense should not be stricken." *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 630-31 (1993).

"We review the dismissal of an affirmative defense *de novo*." *U.S. Bank, N.A. v. Kosterman*, 2015 IL App (1st) 133627, ¶ 7.

¶ 85                                    A. Waiver

¶ 86    "Waiver" is an affirmative defense to an action to enforce a contract. *R & B Kapital Development, LLC v. N. Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 921 (2005) ("Waiver and equitable estoppel are affirmative defenses and under Illinois law must be affirmatively pled or they are waived.").

> "Waiver is the voluntary and intentional relinquishment of a known right by conduct inconsistent with an intent to enforce that right. [Citation.] Waiver can arise either expressly or by conduct inconsistent with an intent to enforce that right. [Citation.] *** Parties to a contract have the power to waive provisions placed in the contract for their benefit, and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required.  ]Citation.] In order to determine the applicability of waiver, one must focus on the conduct of the nonbreaching party. [Citation.]" *In re Nitz*, 317 Ill. App. 3d 119, 130 (2000).

¶ 87    Defendant argues that he pleaded sufficient facts to state the defense of waiver in that he pleaded facts from which a reasonable fact-finder could find that plaintiffs engaged in conduct that was (a) inconsistent with an intent to enforce the note and/or (b) indicated that plaintiffs would not require compliance with the note. Defendant argues that he pleaded "more than mere delay" in enforcing the note and, on appeal, defendant relies on the allegation that "the parties communicated," defendant explained his position on the note, and plaintiffs wrote off the note and received a tax benefit. Defendant argues that taking his allegations as true a fact-finder could

conclude that plaintiffs voluntarily and intentionally relinquished their rights "by conduct inconsistent with an intent to enforce [their] rights."

¶ 88     Plaintiffs initially respond that defendant stated his affirmative defenses "on information and belief" and that such allegations do not allege "facts" and "cannot support defenses." Thus, plaintiffs argue, defendant pleaded "no facts" to support the affirmative defenses of waiver or estoppel. On the merits of the waiver defense, plaintiffs argue that defendant's allegations do not show an "intent to renunciate or relinquish" defendant's liability on the note. Rather, plaintiffs argue, demanding payment and filing suit within the applicable statute of limitations is consistent with an intent to enforce the note. Plaintiffs argue the alleged write off of the note is not properly pleaded (as it is made "on information and belief") and, regardless, is inapposite to the question of waiver.

¶ 89     Defendant replies that even striking the allegations in the affirmative defense made on information and belief, the allegations are sufficient to state a claim of waiver. Defendant argues that the issue on a motion to strike an affirmative defense is whether the allegations, taken as true with all reasonable inferences drawn in favor of the pleader, is whether the allegations are sufficient to state the defense. Defendant argues that under this standard plaintiffs assertion they demanded payment cannot be considered as it does not appear on the face of the pleading, and the court cannot draw the inference in favor of plaintiffs that the alleged conduct "may permit an inference of an intention other than to waive a right." Instead, defendant argues, the proper inference from the facts alleged is the one in favor of defendant: that plaintiffs relinquished their known rights by conduct inconsistent with an intent to enforce those rights.

¶ 90     The material allegations in defendant's affirmative defense of waiver, absent the sole allegation made on information and belief, are that plaintiffs "knowingly waived any rights they

might have had to recover on the Note by, among other actions, declining for almost eight years to exercise their purported contractual rights under the Note to demand payment," and that "[w]hen Plaintiffs' previous counsel contacted [defendant] regarding the Note in or about June 2019, after [defendant's counsel] explained the factual circumstances of the Note's execution in the context of the [sale] and [defendant's consistent position that it was unenforceable, Plaintiffs' previous counsel refrained from pursuing the matter further."

¶ 91    Defendant purports to state a defense of implied waiver. "A party asserting implied waiver must show a 'clear, unequivocal, and decisive act of the party who is alleged to have committed waiver.' " *Norman v. U.S. Bank National Ass'n as Trustee for Structured Asset Mortgage Investments II, Inc.*, 2020 IL App (1st) 190765, ¶ 24. "An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *State Farm Mutual Automobile Insurance Co. v. Easterling*, 2014 IL App (1st) 133225, ¶ 23. "Although waiver may be implied, it nonetheless requires that an intention to waive be clearly inferred from the circumstances." *Lavelle v. Dominick's Finer Foods, Inc. of Illinois*, 227 Ill. App. 3d 764, 771 (1992).

¶ 92    We find that the allegations in defendant's affirmative defense are insufficient as a matter of law to state the defense of waiver. Defendant has failed to allege "a clear, unequivocal, and decisive act of [plaintiffs] manifesting an intention to waive its rights" or "conduct indicating that strict compliance with the contractual provisions will not be required." *In re Nitz*, 317 Ill. App. 3d 119, 130 (2000). The conduct of plaintiffs alleged in the affirmative defense is not inconsistent with "any intention other than to waive" their rights under the note. *Easterling*, 2014 IL App (1st) 133225, ¶ 23. We find that the alleged conduct is not "inconsistent with any intention other than to waive it." *State Farm Mutual Automobile Insurance Co.*, 2014 IL App

(1st) 133225, ¶ 23. Taking defendant's allegations as true and drawing all reasonable inferences in defendant's favor, plaintiffs' conduct is consistent with an intent not to waive their rights under the note. Therefore, we find that defendant has failed to plead a waiver of plaintiffs' rights under the note. *Id*. We do not believe that waiver can "be clearly inferred from the circumstances." *Lavelle*, 227 Ill. app. 3d at 771.

¶ 93    The trial court did not err in granting plaintiffs' motion to dismiss defendant's affirmative defense of waiver.

¶ 94                                  B. Estoppel

¶ 95    Defendant also argues that he adequately pleaded equitable estoppel.

"Equitable estoppel may be defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse. [Citations.]

To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof. [Citation.]

[T]he representation need not be fraudulent in the strict legal sense or done with an intent to mislead or deceive. [Citation] Although fraud is an essential element, it is sufficient that a fraudulent or unjust effect results from allowing another person to raise a claim inconsistent with his or her former declarations. [Citation.]" *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 314 (2001).

¶ 96    Defendant argues that the allegations permit the reasonable inference that plaintiffs misrepresented that they would not enforce the note or concealed that they would; defendant reasonably believed plaintiffs would not enforce the note; and based on that reliance defendant changed his position to his detriment by ordering his financial and business affairs assuming the absence of liability on the note. Defendant argues that the affirmative defense alleges that the representation that plaintiffs would not seek to enforce the note was made in June 2019. Specifically, defendant points to the following allegation in the estoppel affirmative defense:

"When Plaintiffs' previous counsel contacted [defendant] regarding the Note in or about June 2019, after [defendant's counsel] explained the factual circumstances of the Note's execution in the context of the [sale] and [defendant's] consistent position that it was unenforceable, Plaintiffs' previous counsel refrained from pursuing the matter further."

¶ 97    Plaintiffs respond defendant failed to allege facts supporting estoppel because defendant "never alleged facts showing statements or actions by Plaintiffs that could have reasonably led him to believe that he was excused from paying" the note.

¶ 98    "Because Illinois is a fact pleading jurisdiction, we must disregard conclusions of fact or law that are unsupported by specific factual allegations. [Citation.] Conclusions of fact or law are insufficient *** regardless of whether they generally inform the defendant of the nature of the

[defense] against him." *Northbrook Bank & Trust Co.*, 2015 IL App (1st) 133426, ¶ 23. "[T]he principle that all possible inferences and interpretations of the facts are to be drawn in favor of the [non-movant] is not triggered by conclusory and incomplete allegations. [Citation.] *Northbrook Bank & Trust Co.*, 2015 IL App (1st) 133426, ¶ 26. We may "disregard *** conclusions of fact or law not supported by allegations of specific fact." *Northbrook Bank & Trust Co.*, 2015 IL App (1st) 133426, ¶ 26.

¶ 99    Defendant argues that plaintiffs' conduct was a "misrepresentation" or a "concealment" of their intent to enforce the note on which defendant reasonably relied to change his position based on the belief plaintiffs would not enforce the note. Defendant argues that he sufficiently pleaded that an "unjust effect" would result from allowing plaintiffs to raise this claim on the note, which he argues is "inconsistent with [their] former declarations." *Geddes*, 196 Ill. 2d at 314. The question is whether, based on the allegations in the affirmative defense, a fact finder could find that it was reasonable for defendant to rely on plaintiffs' inaction, including after a conversation between the parties, to act as if defendant would have no liability on the note.

¶ 100   We find that defendant has not alleged specific facts as to how this conduct allegedly misled defendant to believe plaintiffs would not pursue the note. At the outset we note that defendant does not rely solely on plaintiffs' delay in enforcing the note to argue that plaintiffs are estopped from enforcing the note. *Wilson v. Illinois Benedictine College*, 112 Ill. App. 3d 932, 939 (1983) ("Although an intent to mislead is not required, the reliance must be reasonable. ([Citation.]) The mere passage of time without action by one party does not by itself bring this doctrine into effect."). Based on defendant's arguments, defendant relies upon plaintiffs' knowledge of the note, delay in enforcement, the conversation between the parties, and plaintiffs' alleged "write off" of the note. Although plaintiffs argue that any alleged write off

would not discharge defendant's debt, we agree with defendant that he does not assert a defense of discharge. Rather, in the context of defendant's estoppel argument, defendant offers the alleged write off as an alleged misrepresentation or concealment related to plaintiffs' intentions regarding enforcing the note. Nonetheless, we find that the facts pled in the affirmative defense fail to raise the possibility that defendant will prevail.

¶ 101   In *Geddes*, on which defendant relies, the court found that the plaintiffs were equitably estopped from filing a complaint against a golf course adjacent to their property based on "errant golf balls hit onto their property." *Geddes*, 196 Ill. 2d at 303-04. The defendants claimed equitable estoppel based on the fact the plaintiffs agreed to the layout of the golf course adjacent to their property "and made other requests that [were] granted," and the golf course was redesigned accordingly at great expense to defendants. *Id*., at 312. The *Geddes* court found that the plaintiffs, "by their conduct, induced or encouraged [the] defendants to design and build the" portion of the course adjacent to the plaintiffs' property, and for the plaintiffs to assert their claims now would be inequitable. *Id*.

¶ 102   This case is distinguishable. In this case, unlike in *Geddes*, defendant does not allege that he and plaintiffs negotiated and agreed that plaintiffs would not enforce the note and defendant proceeded to "order his finances" accordingly, but now plaintiffs are seeking to enforce the note. *Geddes*, 196 Ill. 2d at 315 ("The record clearly and unequivocally shows that [the] plaintiffs knowingly *agreed* to the placement of the fairway." (Emphasis in original.)), *id*. at 317 ("The creation of the golf course, specifically the [adjacent hole,] required considerable negotiation with *** [the] plaintiffs."). There is no allegation of a written agreement between defendant and plaintiffs regarding enforcement of the note. Compare *id*. (the "plaintiffs signed [an] agreement,

which refers throughout to a golf course, and once specifically to 'the golf course fairway that borders the [plaintiffs'] western property line.' ").

¶ 103    We find that the allegations in the equitable estoppel affirmative defense are inadequate to plead that defendant "*reasonably* relied upon the representations in good faith to his *** detriment." "In determining whether a claim for estoppel can be established, the reasonableness of the ***reliance must be examined." *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151, 163-64 (2004). "A party can invoke the doctrine of equitable estoppel only when she reasonably relies on another party's conduct or representations ***." *In re Marriage of Mancine and Gansner*, 2014 IL App (1st) 111138-B, ¶ 53. "To prevail on an estoppel theory, 'the plaintiff must have "had no knowledge or means of knowing the true facts." ' [Citations.]" *Young*, 351 Ill. App. 3d at 164. "The test is whether, considering all the circumstances of the case, conscience and honest dealing require that the [party] be estopped." *Franke v. Geyer*, 209 Ill. App. 3d 1009, 1013 (1991).

¶ 104    In effect, defendant alleged conduct from which he claims he inferred plaintiffs would not pursue the note. Defendant's allegations are insufficient to state equitable estoppel as a defense because defendant failed to allege specific facts to support that inference. Defendant makes this allegation as a conclusion that is not supported by specific facts related to defendant's alleged reliance, which is insufficient to adequately plead the defense. *Northbrook Bank & Trust Co.*, 2015 IL App (1st) 133426, ¶ 26. Therefore, defendant's reliance eon *Geddes* for the proposition that it is enough that an unjust effect would result from allowing plaintiffs to raise a claim that is inconsistent with their former declarations is misplaced. Defendant has not alleged sufficient specific facts that plaintiffs' pursuit of the note is inconsistent with their former declarations.

¶ 105 While we acknowledge and agree that defendant never raised discharge as a defense, we recognize that defendant does not allege that plaintiffs destroyed or returned the note. Therefore, defendant knew the truth: that plaintiffs could still enforce the note. We believe these observations weigh against the reasonableness of defendant's alleged reliance. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d 510, 520-21 (2009) ("Because reliance on a representation must be reasonable, an express reservation of rights weighs heavily against a finding of estoppel."), *McCue v. Colantoni*, 80 Ill. App. 3d 731, 737 (1980) (" A party claiming the benefit of an estoppel must prove that he reasonably relied upon representations and conduct of the party against whom the estoppel is alleged ([citation]) and did not close his eyes to the obvious ([citation])), *Wilson*, 112 Ill. App. 3d 932, 939 (1983) ("to claim reliance on the conduct of another, which could be silence or statements, the party must have acted without knowledge of the truth of the matter relied upon").

¶ 106 Furthermore, defendant failed to allege any facts to demonstrate why or how plaintiffs intended or reasonably expected defendant to order his finances based on the absence of the note obligation. Defendant only argues that "[f]rom [plaintiffs'] lengthy delays, a fact-finder can conclude that plaintiffs reasonably expected that Defendant would act upon the representations that Plaintiffs would not seek to enforce the Note." Defendant's allegations is a mere conclusion unsupported by specific facts. This situation is unlike the situation in *Geddes*. *Geddes*, 196 Ill. 2d at 316. Whereas the contract in *Geddes* was a specific fact evincing that the person to be estopped (the plaintiffs in that case) expected that the person claiming estoppel (the golf course builder) would act in reliance on the non-movant's conduct (*id*.); in this case, defendant has not pled specific facts from which to reasonably infer that plaintiffs expected that defendant would act in reliance on their conduct.

¶ 107    We find that the trial court properly granted plaintiffs' motion to dismiss defendant's affirmative defense of equitable estoppel.

¶ 108                                    (4) Unconscionability

¶ 109    Finally, defendant argues that the note is procedurally and substantively unconscionable and, therefore, unenforceable; therefore, the trial court erred in its judgment on defendant's affirmative defense of unconscionability. "Generally, a court of review will not disturb a trial court's finding unless its judgment is against the manifest weight of the evidence;" including its finding that the defendant "failed to establish [an] affirmative defense." *First National Bank of Elgin v. St. Charles National Bank*, 152 Ill. App. 3d 923, 934 (1987), *Hongsermeier v. Cooper B-Line, Inc.*, 2026 IL App (5th) 240790-U, ¶ 64 ("the circuit court's determination that [the defendant] did not carry the burden of proving its affirmative defense was not against the manifest weight of the evidence."). "Unconscionability can be either 'procedural' or 'substantive' or a combination of both." (Internal quotation marks omitted.) *Fuqua v. SVOX AG*, 2014 IL App (1st) 131429, ¶ 36. "An unconscionable bargain is one which no person in his senses would make and which no fair and honest person would accept. ([Citation]) The term unconscionable encompasses the absence of meaningful choice by one of the parties as well as contract terms which are unreasonably favorable to the other party." *Hartford Fire Insurance Co. v. Architectural Management, Inc.*, 194 Ill. App. 3d 110, 116 (1990). "Although the fact that one party had limited bargaining power may affect a court's interpretation of contractual provisions, the relative bargaining power of parties to a contract is only one factor to be considered in determining whether the enforcement of a [contract] would be unconscionable." *Architectural Management, Inc.*, 194 Ill. App. 3d at 115-16.

"The fact that an agreement 'merely favors one party over another does not make it unconscionable.' [Citation.] 'To rise to the level of being unconscionable, the [agreement] must be improvident, totally one-sided or oppressive.' [Citation.] ***

To determine whether an agreement is unconscionable, we must consider two factors: (1) the conditions under which the agreement was made; and (2) the economic circumstances of the parties that result from the agreement. [Citation.]"

*In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 251 (2002).

¶ 110   "Procedural unconscionability results from some impropriety during the process of forming the contract that deprives a party of a meaningful choice." *Dick-Ipsen v. Humphrey, Farrington & McClain, P.C.*, 2024 IL App (1st) 241043, ¶ 27. Procedural unconscionability "also takes into account the disparity of bargaining power between the [parties.] [Citation.] When deciding whether a contract or a provision thereof is procedurally unconscionable, courts may consider 'all the circumstances surrounding the transaction including the manner in which the contract was entered into [and], whether each party had a reasonable opportunity to understand the terms of the contract ***.' [Citation.]" *Id.*

¶ 111   Defendant argues that the note is procedurally unconscionable because defendant had no "meaningful choice" due to the fact plaintiffs had "domineering bargaining power" while defendant "had none" as a result of the impending failure of CVH, the urgency to complete the sale, and the necessity of plaintiffs' consent to do so. Plaintiffs' respond, in pertinent part to this

appeal[4], that defendant has failed to "point to testimony or documents that support the conclusion that [defendant] had no choice but to sign the Note." Plaintiffs argue that defendant was represented by counsel and, regarding surprise, that the record reflects that defendant understood the note and negotiated a change in its terms. Plaintiffs argue that defendant's concerns about the sale are not evidence of unconscionability, and the fact one party has bargaining power does not make a bargained-for agreement unconscionable. Finally, plaintiffs argue that in negotiating plaintiffs' consents and waivers to facilitate the sale, plaintiffs offered defendant alternatives that did not include defendant's note, but defendant chose to offer the note. Defendant replies that his duties to the company and the need to complete the sale severely undercut his bargaining power; therefore, the general rule that a lack of bargaining power does not establish procedural unconscionability does not apply. We find that the trial court's implicit finding that the agreement between the parties is not "one which no reasonable person would make, and no honest person would accept" is not against the manifest weight of the evidence.

¶ 112    Defendant cites no authority in support of the proposition that negotiating on behalf of another to whom a fiduciary duty is owed undercuts that party's bargaining power. Defendant has not pointed to evidence to demonstrate that the bargaining power between the parties in this case was "vastly unequal." *Fuqua*, 2014 IL App (1st) 131429, ¶ 38. Rather, defendant "was an active participant in the negotiations and the terms of the [note."] See *id*. ¶ 38. We find that defendant's motivation to complete the sale is not evidence of procedural unconscionability

---

[4]    In deference to a potential *de novo* standard of review of defendant's affirmative defense of unconscionability, plaintiffs responded to arguments defendant plead in support of the affirmative defense but which defendant has not pursued in this appeal. For our purposes, points not argued in the appellant's opening brief are forfeited and do not merit review." *In re Estate of Sippel*, 2025 IL App (3d) 230227, ¶ 65 n2.

where defendant negotiated and agreed to terms that are not greatly imbalanced in their mutual obligations. See *In re Marriage of Prill*, 2021 IL App (1st) 200516, ¶¶ 19-23 (noting *inter alia* that the appellant signed the postnuptial agreement "because she wanted to complete the agreement so she could move out of the house and end the marriage"). "Thus, procedural unconscionability is not a factor under these facts." *Fuqua*, 2014 IL App (1st) 131429, ¶ 38.

¶ 113    Furthermore, a finding that defendant was not unfairly surprised is not against the manifest weight of the evidence. In *Zuniga*, the court wrote that "the mere fact that both parties are businessmen [does not] justify the utilization of unfair surprise to the detriment of one of the parties ***. [Citation.] *** Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming." *Zuniga*, 2021 IL App (1st) 201264, ¶ 14. Defendant has pointed to no evidence he was unaware of any terms contained in the note. On the contrary, defendant negotiated and agreed to the terms of the note. We cannot find that "unfair surprise" is clearly evident; therefore, the trial court's judgment on this point is not against the manifest weight of the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006) ("A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.").

¶ 114    Next, defendant argues that the note is substantively unconscionable because there is " 'an overall imbalance in the obligations and rights imposed by" the note. On the question of substantive unconscionability, plaintiffs note that in exchange for their receipt of the note, defendant received their consent to the sale, plaintiffs' agreement to waive their right to a fairness opinion, a release of any claims against defendant related to the sale, and the cancellation of CVH's interest in SiO2, and defendant received valuable assets of CVH in the pre-sale restructuring of the company. Plaintiffs argue that "there is simply no unconscionability

in the trade-offs [defendant] offered, contracted to make, and received," therefore the trial court's judgment should be affirmed. Defendant merely replied that the "evidence established an overall imbalance in the parties' rights and duties ***." We agree with plaintiffs.

¶ 115   In *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 28 (2006), our supreme court adopted the "definition of substantive unconscionability" stated by the Arizona Supreme Court. *Kinkel*, 223 Ill. 2d at 28.

> " 'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.' [Citation.]" *Id*.

¶ 116   A finding that the obligations under the note are not "so one-sided as to oppress or unfairly surprise" defendant is not against the manifest weight of the evidence. There is ample evidence that both parties benefitted from the execution of the note and that there is not an "overall imbalance in the obligations and rights imposed by the bargain." As noted by plaintiffs, defendant received the benefit of completing the transaction as well as other financial gains, and plaintiffs received the compensation they thought was fair for their interest in the company and other concessions to defendant. The substantive unconscionability of the note is not "clearly evident" from the evidence and the trial court's judgment is reasonable. Therefore, the trial court's judgment is affirmed. *Best*, 223 Ill. 2d at 350.

¶ 117                                    CONCLUSION

¶ 118   For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 119   Affirmed.